[No. 36918. Department Two. July 16, 1964.]

GORDON L. TYREE et al., Appellants, v. GENERAL INSURANCE
COMPANY OF AMERICA, Respondent.*

Wayne Gladstone, for appellants.

Loney, Westland, Koontz & Raekes, for respondent.

WEAVER, J.—This appeal is the second phase of a multi-party lawsuit commenced in 1960.

The first phase, based upon plaintiffs' first cause of action in their original complaint, culminated in an affirmance of a summary judgment, dated September 14, 1961, dismissing the action against defendant Roy L. Stone (and others) with prejudice. Tyree v. Stone, 62 Wn. (2d) 694, 384 P. (2d) 626 (1963).

October 2, 1961, plaintiffs filed an amended complaint in which the second and third causes of action are directed against defendant General Insurance Company of America. Generally, plaintiffs seek reformation of a fire insurance policy and judgment thereon for $19,350.

Plaintiffs appeal from a judgment dated July 18, 1962, dismissing their cause of action for reformation of the

*Reported in 394 P. (2d) 222.

fire insurance policy and granting judgment to plaintiffs for $1,266.67 against defendant insurance company.

The issues of this appeal spring from the same series of basic events considered in the first appeal. Our prior decision should be read for further detailed facts. We summarize the findings of fact, which we find supported by substantial evidence in the record.

In 1944, defendant Stone (who has been dismissed from this action) held a lease from the federal government on certain land in Richland, Washington, on which a food market was located. Between 1944 and 1950, Stone constructed an addition to the market to be used as a bakery, gave title to the government, and leased the land and bakery from the government. The lease provided that the bakery premises could not be assigned or transferred without "the express prior and written approval" of the government. Stone owned the inventory and equipment in the bakery.

February 14, 1950, Stone secured permission from the government to sublease the bakery to plaintiffs, the sublease to be subordinate to Stone's lease.

March 7, 1950, Stone sold the bakery to plaintiffs on a conditional sales contract.[1] The contract of sale included insofar as it is pertinent to the present controversy:

"(c) The right to occupy Garmo's [Stone's] Bakery Building and to enjoy all the rights and privileges of the Vendors in the use and occupancy of the same under the provision of said Supplemental Agreement No. II dated February 1, 1948, and the letter of the General Electric Company [agent of the government] dated February 14, 1950 hereinabove referred to. The Vendors will, *to the extent that they are permitted to do so,* assign to the Purchasers all of their rights under said Supplemental Agreement No. II dated February 1, 1948, and said letter of February 14, 1950, from the General Electric Company above referred to." (The lease agreements between Stone and the government.) (Italics ours.)

---

[1] In *Tyree v. Stone,* 62 Wn. (2d) 694, 384 P. (2d) 626 (1963), we held that (a) plaintiffs had waived their right to rescind this contract and recover all sums paid thereunder; and (b) plaintiffs' action (if any) against Stone for damages for breach of contract was barred by the statute of limitations.

About 6 months later Stone sold the food market to K. T. Campbell, and, with the consent of the government, assigned the lease agreements to him. The agreements expired February 1, 1953. May 1, 1953, the government executed a new lease to Campbell for the land and building containing the food market and bakery. Plaintiffs accepted a sublease from Campbell for the bakery. It expired January 31, 1960.

March 7, 1950, when plaintiffs purchased the bakery from Stone on conditional sales contract, Stone had been carrying fire insurance on the bakery *building,* although it was owned by the government. The trial court found that

" . . . the plaintiffs, without consulting the insurance agent, elected to take over the existing policy held by defendants Stone."

The insurance policy was renewed from time to time. Finally, on February 17, 1958, the insurance agent wrote one of the plaintiffs calling his attention to the fact that the

" . . . policy covering your *building* . . . for Fire and Extended Coverage is expiring April 1, 1958." (Italics ours.)

Later, the other plaintiff endorsed the letter: "Please continue this policy as stated above." The fire insurance policy was issued for the term from April 1, 1958 to April 1, 1961. It insured the bakery building for the face amount of the policy but not " . . . in any event for more than the interest of the insured . . . ." We note that the term

of the policy extends beyond the expiration date of plaintiffs' sublease from Campbell.

From 1950 until 1959, plaintiffs sought, without success, to become the prime lessees from the government of the bakery addition to the food market instead of the sublessees of Stone and later of Campbell. The government did not consent.

August 4, 1955, Congress passed the Atomic Energy Community Act of 1955. 42 U.S.C. § 2301 *et seq.* It provided for the sale of government-owned properties in communities

such as Richland, and for a system of priority purchase. 42 U.S.C. § 2332.

Based upon the instruments heretofore identified, plaintiffs made application for priority to purchase the bakery addition to the food market. Denial of the application was affirmed by the Advisory Board of Priority Appeals, United States Atomic Energy Commission. In June, 1959, the United States District Court denied redress to plaintiffs.

In July, 1959, 6⅓ months prior to the expiration of plaintiffs' sublease from Campbell, the bakery addition was severely damaged by fire. Plaintiffs seek to recover their alleged fire loss from defendant insurance company.

We have labored the facts as shown by the record to demonstrate the soundness of the court's finding

"That at the time of the fire the interest of plaintiffs consisted in the right to occupy the buildings for a period of six and one-third months, the reasonable value of which right is established to be the sum of $200.00 per month, for a total of $1,266.67."

Plaintiffs' arguments, reduced to their lowest common denominator, assert that their insurable interests in the bakery structure total the monetary value of the fire damage.

Plaintiffs' conditional sales contract with Stone required plaintiffs to insure the fixtures, equipment, and building. This insurance, however, was to be in favor of the *vendor Stone* to protect *his* interest in the property. Since neither Stone nor his successor in interest is involved in this facet of the present controversy, plaintiffs are not entitled to the value of the property destroyed by fire.

Further, plaintiffs had an insurable interest against their possible liability for loss of the property by reason of their own negligence; but the record does not disclose such a claim against them.

For a number of years plaintiffs believed themselves entitled to the priority right to acquire ownership of the building from the government. They claim an insurable interest in "inchoate rights in expectation." Their expectations, however, never materialized. In fact they were

specifically denied by the Advisory Board of Priority Appeals, Atomic Energy Commission, and, in June of 1959, a month prior to the fire, plaintiffs were denied redress by the United States District Court.

None of the above arguments supports the conclusion that plaintiffs had insurable interests sufficient to entitle them to recover the value of the fire damage.

Plaintiffs did, however, have an insurable interest in their right to occupy the premises under the terms of their sublease from Campbell for a period of 6⅓ months. The trial court recognized this right and awarded to plaintiffs a judgment against defendant for $1,266.67. Thus, they have been compensated for the only pecuniary loss suffered by reason of fire damage to the premises. Insurance on the personal property in the bakery is not involved in this action.

We agree with the trial court that the record discloses no basis in law or in fact for reformation of the insurance policy. Even if the policy were reformed, plaintiffs' recovery would be limited to the actual loss suffered by reason of their insurable interest. RCW 48.18.040, 050. This amount would be the same as that awarded to plaintiffs.

Plaintiffs assign error to a finding of fact that defendant Campbell was dismissed from this action by summary judgment. The record before us does not sustain this finding of fact. The finding, however, is irrelevant to the issues of the instant appeal.

Plaintiffs assign error to the court's refusal to grant a new trial because of newly discovered evidence. The evidence is a letter dated March 31, 1953, from defendant's agent to defendant insurance company stating that "this property is on lease from the Government . . ." Denial of a new trial was not error; the evidence does not meet the test of the rule announced in *Nelson v. Placanica,* 33 Wn. (2d) 523, 526, 206 P. (2d) 296 (1949).

At the close of the first day of trial, the judge stated that he would read the several depositions during the evening in order to expedite the trial. We find no merit

in plaintiffs' assignment of error that they were prejudiced by this. No objection was made to the court's announced intention, nor have plaintiffs demonstrated any prejudice.

In appellate argument plaintiffs' counsel moved to strike defendant's brief and deny oral argument because of defendant's gross tardiness in filing and serving its brief within the time fixed by Rule on Appeal 41, RCW Vol. 0. Although the motion was denied, we find it of sufficient merit to disallow costs to defendant on appeal.

The judgment is affirmed.

OTT, C. J., HILL, DONWORTH, and FINLEY, JJ., concur.

---

September 28, 1964. Petition for rehearing denied.