**Alvae WINTERTON, Plaintiff,**

v.

**Boydie Clay VAN ZANDT, Defendant,**

**Farmers Insurance Exchange, Garnishee.**

Alvae Winterton, Interpleader-Respondent,

William J. Cason, Interpleader-Respondent,

Kelso Journey, Interpleader-Appellant.

No. 23706.

Kansas City Court of Appeals,

Missouri.

Dec. 2, 1963.

Kelso Journey, pro se, Samuel L. Trusty, Kansas City, for appellant.

Delton L. Houtchens, Clinton, Thomas G. Woolsey, Versailles, for respondent.

MAUGHMER, Commissioner.

An automobile owned and operated by the plaintiff Alvae Winterton, collided with one *owned* by a Mr. Fred Marsh, but which at the time was being operated and solely occupied by the defendant Boydie Clay Van Zandt. The interpleaders, attorneys Wil-liam J. Cason and Kelso Journey, acting as counsel for Winterton, successfully prose-cuted his suit for personal injuries and property damage to a final judgment in the sum of $14,250 against the defendant Van Zandt. Thereafter the plaintiff, by his attorneys, brought a garnishment proceed-ing based upon that judgment, against the Farmers Insurance Exchange, garnishee in the present proceeding. The purpose of the garnishment suit was to establish the lia-bility of Exchange, as insurer of Fred Marsh, owner, for payment of that portion of the judgment ($12,500) which was not in excess of its coverage. Plaintiff was suc-cessful and the responsibility of the com-pany was finally determined by the Supreme Court of Missouri (Winterton v. Van Zandt and Farmers Insurance Exchange, Mo., 351 S.W.2d 696).

As of January 15, 1962, the amount of Exchange's liability under the judgment, plus interest, amounted to $19,856.67. On this latter date, Farmers Insurance Ex-change, as judgment debtor, and pursuant to its motion, was authorized to and did pay this total sum to the Circuit Court of Morgan County, in custodia legis, with that court undertaking to divide the money be-tween Winterton, the judgment creditor, and his attorneys Cason and Journey. The judgment making such division is the case presently before us for review. The only controversy is between the two lawyers as to the division of the attorney fee, the total amount of which is not materially disputed except that Cason thought their expenses were to be paid out of their fee, while it was Journey's opinion that the expenses were to "come off the top" of the whole judgment.

The case was tried to the court without a jury. Apparently the trial court found that approximately $600 had been advanced by Mr. Journey to Winterton for suit ex-penses. The court took this sum "off the top" of the recovery, ordered that an item of $40.55 be paid to the Circuit Court of Lafayette County, approved expenses of Cason in the sum of $70, and expenses of

Journey in the amount of $997.83. This left a net attorney fee of $9,124.15. The court awarded $3600 or just under 40 percent to Cason, and $5,524.15 or just over 60 percent to Journey. Judgment was entered accordingly. The only appeal is by Kelso Journey.

 This being a case tried by the court, we are required to "review the case upon both the law and the evidence as in suits of an equitable nature". But "[t]he judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses". V.A.M.R., Civil Rule 73.01(d); Numer et al. v. Kansas City, Missouri et al., Mo.App., 365 S.W.2d 753, 758.

The statements, the direct and cross-examination of Mr. Cason and of Mr. Journey fill nearly 500 pages in the transcript. We shall endeavor to set forth the material facts, which were developed almost entirely by the testimony of the two contestants, in a condensed form.

Except for a period of four years in the navy, Senator Kelso Journey has since 1940, practiced law in Clinton, Henry County, Missouri. During 1951 and 1952, he was Prosecuting Attorney for that county. About February 1, 1951, William J. Cason, who had just finished law school, became associated professionally with Journey in Clinton. Their offices were those of the Prosecuting Attorney in the court house.

These gentlemen agree that Cason was appointed Assistant Prosecuting Attorney, and that he was to help in the performance of the duties in that office. There was no written agreement but both agree that Journey gave Cason a minimum guarantee of earnings. Originally this guarantee was $175 a month, which, within a few months, was increased to $375. The association was not a partnership, nor was it a strictly employer-employee relationship. No Social Security assessments were deducted from Cason's earnings. Journey paid the office expenses and reimbursed Cason for expenses incurred by Cason while working on Journey's cases. Mr. Cason testified that under the arrangement he was free to accept legal business on his own, including representation of any clients who came to the office. Mr. Journey said that Cason was to take cases in Journey's name, who would compensate Mr. Cason on the basis of "value of work done and the total responsibility assumed and work done in the entire matter". In the fall of 1952, Mr. Cason was elected Prosecuting Attorney and on January 1, 1953, when he assumed office, the association or arrangement between these two attorneys was terminated.

The automobile accident out of which all this litigation arose occurred on September 9, 1952, in Henry County. The plaintiff Winterton was a resident of Iowa. The other vehicle, driven by defendant Van Zandt, was owned by one Fred Marsh, who was insured with the Farmers Insurance Exchange. The company denied that Van Zandt was authorized to use the vehicle at the time of the accident. That issue was litigated to the Supreme Court of Missouri and finally determined adversely to the company.

Shortly after the accident, Winterton, accompanied by the Sheriff of Henry County, entered the Journey-Cason law offices. According to Cason they "didn't talk with the secretary", but came directly to him and the sheriff said: "Bill, this man would like to talk to you". Mr. Cason said he took a written contract in his name alone—50 percent contingent—and immediately began work on the case from the standpoint of both the law and the facts. This written contract was not in evidence. Mr. Cason said that it and the whole file were turned over to Mr. Journey in 1957. However, all of the parties, including the plaintiff Winterton, agree that employment was on a 50 percent contingent fee basis.

Numerous unusual, if not rare, difficulties or questions were presented during

the ten years' duration of the Winterton claim and its litigation. The services of Mr. Francisco, a lawyer then practicing in Clinton, were utilized as an investigator. Mr. Francisco has been paid by Mr. Journey for his work in the matter. A few days after taking the employment contract, Mr. Cason prepared a petition for damages (Winterton v. Van Zandt) signing his name alone and filed it in court. Some question arose as to the validity of the service of the petition and summons upon the defendant. Mr. Cason and Mr. Francisco persuaded the defendant to sign an entry of appearance. The insurance company's attorneys questioned the ethics of such procedure and instituted a declaratory judgment action in Jackson County against Cason, describing him as the agent for Mr. Winterton.

The Insurance Company took the position that Van Zandt's use of the automobile at the time of the accident was without the consent, express or implied, of Fred Marsh, owner and its insured, and declined to defend the suit. Van Zandt did not defend and on January 23, 1953, plaintiff proved up and took a default judgment in the principal sum of $14,250. Mr. Cason was the only attorney appearing for plaintiff at that time.

The judgment became final and garnishment proceedings on it were instituted against the Farmers Insurance Exchange. The original verdict was general although plaintiff's petition asked $12,500 for personal injuries and $2500 property damage. The "omnibus clause" in the insurance policy covering Marsh was limited to $10,000 for personal injuries and $2500 for property damage. Liability for payment to this limited extent ($12,500) was in the garnishment action sought to be imposed upon the company. Van Zandt's testimony was needed and at that time he was incarcerated in the federal prison at Leavenworth, Kansas, so the case was continued. Before this last litigation was disposed of Mr. Cason was elected to the State Senate. The evidence indicates that because of the press

of his senatorial duties or because he doubted the strength of the case, or for other reasons, Cason urged a settlement of the matter, the insurance company having offered $7,500 and Cason thought that by negotiations this amount could be increased.

Soon after the garnishment suit was filed Cason says that for the first time he consulted with Journey and brought him into the case. Journey says he was of counsel all the time, knew about the case and had discussed it with Cason and Francisco. Francisco corroborated Journey in this respect. In any event, Journey took up the laboring oars at this period and made an argument on the matter before the Supreme Court. Cason also did work on the appeal and both were listed on the briefs as counsel. Cason also signed an affidavit which Journey had prepared securing a legislative continuance in the Supreme Court. Senator Journey made a trip to Iowa to see Winterton, took Van Zandt's deposition and worked on the whole matter particularly after the garnishment proceeding was instituted.

It is the position of appellant, Senator Journey, that: (1) on January 1, 1953, when this law practice association was terminated, all accounts were squared and Journey paid Cason in full for all services performed by Cason up to that time on the Winterton case and on all others; (2) Cason performed no service thereafter, although Journey concedes that if he did, he would be entitled to be fairly compensated therefor; (3) Cason abandoned the suit, urged settlement, and refused to actively participate in the garnishment litigation; (4) the $3600 fee allowed Cason is grossly excessive for the services rendered by him, based upon the time consumed and the responsibility assumed, and especially so since Journey supplied the office, including overhead and almost all of the expenses incurred in this particular litigation. Cason concedes that Journey participated as counsel in this litigation, particularly during the

later years and expressed the opinion that the fee should be divided equally.

Appellant insists that the ruling in the case of McFarland v. George, Mo.App., 316 S.W.2d 662, precludes payment of even a part of the fee to Cason. In the McFarland case, plaintiff merely referred the case to defendant, performed no legal service therein and assumed no responsibility in the handling of the will contest. In its opinion the court referred to 42 V.A.M.S., Supreme Court Rules 4.34, which reads: "No division of fees for legal services is proper, except with another lawyer, based upon a division of service or responsibility", and held that mere reference of the case was not sufficient to either justify or authorize participation in a division of the fee. In our particular case the parties tacitly agreed at least, and the trial court attempted to divide the fee, we think, not on the basis that Cason owned the contract, but rather on the basis of the services performed and the responsibilities assumed.

It is apparent, in our opinion, from the testimony of Cason and Journey, although they disagree absolutely in many respects, that both represented Winterton in this litigation. Although the original contract was in Cason's name alone, Journey knew about the case, discussed it with both Cason and Francisco and at least after the garnishment proceeding was instituted, did much of the work in court and in the office. He also advanced most of the expenses. Likewise legal services were performed by Cason. He prepared the petition, made the court appearances in the original suit and likely did much of the brief work. That the trial court reached similar conclusions seems evident from the judgment entered.

It would be difficult to ascertain with complete precision and accuracy the proportionate contribution of each lawyer based upon his individual expenditure of time, legal services and assumption of responsibility. We believe that in this case both are entitled to participate in a division of the fee. The judgment below reflects a like conclusion. We believe that the division made by the trial court is supported by substantial, credible evidence and is not clearly erroneous. It is our opinion, too, that the trial judge for whom we have deep respect, was in a better position to make the actual division than we are because first, he saw, observed and heard the witnesses and second, much of the litigation from which the fee came was conducted before him.

We find no error in this matter. We approve the findings and conclusions of the trial court. The judgment is affirmed.

SPERRY, C., not participating.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the court.

All concur.