[No. 3658–8–III.   Division Three.   July 16, 1981.]

MELVIN M. BELLI, *Appellant,* v. DONALD R.
SHAW, ET AL, *Respondents.*

*James P. Hurley* and *Kurtz & Hurley,* for appellant.

*Walter B. Dauber,* pro se, and *John Gavin* and *Gavin, Robinson, Kendrick, Redman & Mays,* for respondents.

McInturff, C.J.—Melvin Belli appeals from a judgment notwithstanding the verdict which involves a dispute over

attorneys fees.

In the summer of 1959 Mr. Belli, a prominent California attorney, met with Wade Church, then Attorney General for Arizona, to discuss a libel action against Phoenix Newspapers, Inc. It was suggested by Mr. Belli that Peter Tonkoff, an attorney from Yakima, Washington, be associated with him on the case. Correspondence in December 1959 between Mr. Church and Mr. Belli indicated acceptance of the 3–way split of the one–third contingency fee between Mr. Belli, Mr. Tonkoff and local Arizona counsel.

Philip Goldstein was subsequently contacted by Mr. Church to act as local counsel. Mr. Goldstein prepared and argued successfully against a motion to dismiss on January 20, 1961. In March and April 1961, the office manager of Mr. Belli's firm requested status reports on the Church litigation and inquired whether Mr. Belli was still a participant in the case. Mr. Goldstein responded that as far as Mr. Church was concerned, Mr. Belli was still a participating attorney.

On April 21, 1962, Mr. Tonkoff requested from Mr. Goldstein the fee arrangements made by Mr. Belli with Mr. Church. Mr. Church responded by submitting a copy of the December 1959 correspondence regarding fees. On May 10, 1962, Mr. Tonkoff wrote to Mr. Church indicating the agreement to split the one–third contingency fee was satisfactory to him.

The trial date was continued several times from June 1962 to April 1963, twice at the request of Mr. Belli. Mr. Goldstein notified Mr. Belli and Mr. Tonkoff of the April 29, 1963 trial date and indicated no further continuances would be granted. Mr. Belli responded on April 10, 1963 he could not try the case on that date and again sought a continuance, "If you can put the case over, I will try it. I would like to try it with Pete. If you can't put it over, you will have to count me out." Mr. Belli did not appear at the trial, but sent his partner, Richard Gerry, instructing him not to sit on the case if Mr. Goldstein and Mr. Tonkoff were going to try it. Finding Mr. Goldstein and Mr. Tonkoff were

going to try the case, Mr. Gerry left Phoenix. The jury returned a $50,000 verdict in favor of Mr. Church. Phoenix Newspapers, Inc., appealed and the Arizona Supreme Court reversed the trial court on November 24, 1968, and remanded for a new trial. While the case was on that appeal, Mr. Tonkoff wrote Mr. Goldstein the following on May 10, 1967:

> At the time I was introduced to this case and requested to sit in with Mel, Mel advised me that he had a contingent fee contract with Wade [Church] for one-third and that Wade would secure his own local counsel. This, of course, has been altogether abrogated since you and I have done all of the work.
>
> I am enclosing a copy of my contingent fee contract which provides for one-third if the case is not appealed and 40% if appealed and client pays for all of the out-of-pocket expenses. . . .
>
> Whatever your judgment is, I will be entirely satisfied. I don't know how we are going to handle the Belli situation, but we will talk about that later. . . .

The second trial in June 1971 between Mr. Church and Phoenix Newspapers, Inc., resulted in a $485,000 verdict for Mr. Church. Subsequent application for certiorari by Phoenix Newspapers, Inc. was denied by the United States Supreme Court. Mr. Belli did not attend the second trial and stated to Mr. Church he saw no reason to break up the "winning team" of Tonkoff and Goldstein. After 17 years of litigation and appeals, Mr. Goldstein received a check for $625,872 in satisfaction of the judgment, plus interest. He deducted $253,000 for attorneys fees, keeping $153,000 for himself under an agreement with Mr. Tonkoff's law firm, and forwarding $100,000 to Mr. Donald Shaw and Mr. Walter Dauber, who were law partners of Mr. Tonkoff.[1]

Mr. Shaw refused to pay Mr. Belli 50 percent of the $100,000 as attorneys fees and therefore Mr. Belli commenced an action for its recovery. The jury returned a $50,000 verdict for Mr. Belli. However, the trial court

---

[1]Mr. Tonkoff was killed in an airplane accident in 1973.

granted judgment notwithstanding the verdict, holding there was insufficient evidence, as a matter of law, that a contract existed between Mr. Belli and Mr. Tonkoff concerning distribution of fees generated by the instant case. The court also determined the agreement between Mr. Belli and Mr. Tonkoff to share the fee generated by the litigation was for a "referral" or "finder fee" which would not be enforced by Washington courts.

Judicial review of a judgment notwithstanding the verdict is limited to consideration of evidence in the light most favorable to the nonmoving party. There is no element of discretion vested in the trial court, and the motion should be granted only in those instances where it can be held as a matter of law there is no competent evidence nor reasonable inference which would sustain the jury verdict. *Rasor v. Retail Credit Co.,* 87 Wn.2d 516, 533–34, 554 P.2d 1041 (1976). A motion for judgment notwithstanding the verdict admits, for purposes of the motion, the truth of the nonmoving party's evidence and all reasonable inferences drawn therefrom. *Powers v. Hastings,* 93 Wn.2d 709, 713, 612 P.2d 371 (1980). A motion for judgment notwithstanding the verdict can only be granted when the court can say as a matter of law there is no substantial evidence to support the opponent's claim. *Powers, supra* at 713. Substantial evidence is defined as evidence of sufficient quantum to persuade a fair–minded person of the truth of the declared premise. *Powers, supra* at 713.

Initially, Mr. Belli contends the court erred in determining no enforceable contract existed between Mr. Tonkoff and Mr. Belli concerning attorneys fees.

We disagree. The initial attorney fees agreement between Mr. Church and Mr. Belli was for the purpose of Mr. Belli's participation in the first trial.[2] As noted by the trial judge,

---

[2] Mr. Belli testified that he reviewed the libelous article; reviewed the law of the case; analyzed the complaint; discussed changes in the complaint with Mr. Tonkoff; researched current cases dealing with libel; met with Mr. Church to discuss the case; reviewed proposed jury instructions; offered to do additional research and briefing on the case; attempted to obtain expert witnesses for the

it could reasonably be concluded from the correspondence that Mr. Belli and Mr. Tonkoff did agree they would jointly participate in the preparation and trial of the case. On October 5, 1959, Mr. Church wrote Mr. Belli:

> We want it understood that you will have charge of this case and any association made with Mr. Tonkoff will be at your request.

On November 23, 1962, again Mr. Church corresponded with Mr. Belli as follows:

> You have, no doubt, been notified by Phil Goldstein that the above–entitled case has been postponed to February 25, 1963.
>
> I sincerely hope that this will allow you to arrange your trial schedule so that you can plan to be here with us at that time. This is a tremendously serious matter as far as I am concerned and that is why I have made arrangement for the very best counsel.

On February 20, 1963, Mr. Church wrote Mr. Belli:

> I say a little prayer every night that you will be able to *represent me,* because I have complete confidence in *you* and the stakes are very high, namely, my reputation.

(Italics ours.)

Mr. Belli then responded on April 10, 1963 as follows:

Dear Phil [Mr. Goldstein]:

> I definitely want to try this case with Pete Tonkoff, but whatever gave you, Wade Church, or your judges the idea that you could summarily kick cases off the calendar, and, just as summarily, put them back on and order me to trial on a date certain? I do have one or two other cases that I must try this year. No matter how much I want to, I absolutely cannot try Wade Church's case on April 29, 1963.
>
> . . .
>
> If you can put the case over, I will try it. I would like to try it with Pete. *If you can't put it over, you will have to count me out.*

(Italics ours.) Mr. Church subsequently expressed his dis-

---

trial; reviewed the transcript of the trial; conversed with Mr. Tonkoff at least twice a month regarding the case and discussed the case with Mr. Tonkoff and other attorneys at numerous meetings and conventions.

may by stating in a telegram on April 26, 1963: "Terribly sorry you could not handle my case—I hired you because I feel you are the best in the business—. . ."

It is undisputed Mr. Belli did not personally participate in the trial held on April 29, 1963, and expressed, "If you can't put it over, you will have to count me out." The record reflects the consideration for the Church–Belli contract[3] was actual participation at trial. In a letter to Mr. Goldstein dated May 10, 1967, Mr. Tonkoff stated:

> At the time I was introduced to this case and requested to sit in with Mel, Mel advised me that he had a contingent fee contract with Wade for one–third and that Wade would secure his own local counsel. This, of course, has been altogether *abrogated since you and I have done all the work.*

(Italics ours.)

On May 10, 1967, subsequent to the first trial, Mr. Tonkoff and Mr. Goldstein negotiated a new contingent fee contract with Mr. Church. Mr. Belli was not a party to this agreement. There is no evidence Mr. Belli reached a new agreement with Mr. Tonkoff after impliedly abandoning the original agreement. Moreover, when Mr. Goldstein queried Mr. Belli about his fee arrangement with Mr. Tonkoff, Mr. Belli replied: "In answer to your letter 2 January 1974, we had an arrangement with Peter Tonkoff of one–third forwarding fee on any case between us. . . ."

Mr. Belli contends, however, the court erred in deter-

---

[3]The court's memorandum opinion stated:

"At the commencement of the *Church* case it could reasonably be concluded that plaintiff and J. P. Tonkoff did agree that they would jointly participate in preparation and trial of the *Church* case. They each expressed their intention to do so.

"However, even before the first trial, it is apparent plaintiff for whatever reason failed to render performance and expressed withdrawal of this offer to perform."

Additionally, in a letter dated December 30, 1959 to Mr. Tonkoff, Mr. Belli states:

"Will you do the pleading and paper work? If you will, I will send someone over from here to do the investigative work and try the case with you if you want me."

mining the collection of legal fees under his agreement with Mr. Tonkoff would be prohibited under the "referral" or "finder fees" theories. Disciplinary Rule 2–107(A)[4] governing division of fees among lawyers states:

> (A) A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of his law firm or law office, unless:
> (1) The client consents to employment of the other lawyer after a full disclosure that a division of fees will be made.
> (2) The division is made in proportion to the services performed and responsibility assumed by each.
> (3) The total fee of the lawyers does not clearly exceed reasonable compensation for all legal services they rendered the client.

More simply stated, the rules require that before the client consents to employment of another lawyer he should be made to understand the division of fees may be made, that the division is to be made in proportion to the services performed and the responsibility assumed by each, and that the total fee to be paid will not exceed what is reasonable compensation for services rendered. Since Mr. Church agreed from the beginning of the case he would not be required to pay any portion of attorney fees out of his own pocket and that the fees would cover all legal expenses less costs in connection with the litigation,[5] we conclude the first requirement was satisfied. We thus turn to the second requirement—the important issue in this case.

■ Under Washington law, (CPR) DR 2–107(A)(2) requires a lawyer fee division be made in proportion to services performed and responsibility assumed by each. *Hansen v. Wightman*, 14 Wn. App. 78, 95, 538 P.2d 1238

---

[4]Code of Professional Responsibility DR 2–107 became effective January 1, 1972. Canon 34, its predecessor in this state, also required a division of fees based upon service and responsibility. *See Hansen v. Wightman*, 14 Wn. App. 78, 94 n.5, 538 P.2d 1238 (1975).

[5]In a letter dated December 21, 1959 to Mr. Belli, Mr. Church wrote: "I will pay the costs involved and you attorneys will be entitled to one–third of the recovery."

(1975). Service and responsibility must relate to actual participation in or handling of the case. To merely recommend another lawyer or refer a case is not performing a legal service.[6] As stated in *Palmer v. Breyfogle,* 217 Kan. 128, 144, 535 P.2d 955, 967 (1975):

> 'The service and responsibility must, to be effective, relate to the handling of the case.' If the division of fees is to be placed on the basis of how much service or responsibility each contributed in connection with the legal services rendered in the case, obviously, the responsibility called for under the rule *must be related to the legal services rendered in the actual handling of the case.*

(some italics ours) citing H. S. Drinker, *Legal Ethics* (1953). Additionally, the court in denouncing the evils of referral fees philosophized:

> Members of the public who seek the services of an attorney cannot be treated by him as mere merchandise or articles of trade in the market place. A client is not an article of property in which a lawyer can claim a proprietary interest, which he can sell to other lawyers expecting to be compensated for the loss of property right.

*Palmer,* 217 Kan. at 142, 535 P.2d at 965–66.

We find no effort on the part of Mr. Belli during the second trial which rises to the level of (CPR) DR 2–107(A)(2) and therefore consider the Belli–Tonkoff referral agreement unenforceable.

Agreements between lawyers which violate rules promulgated by our Supreme Court will not be enforced. The trial judge did not err in granting judgment notwithstanding the verdict. There is a lack of substantial evidence that a contract existed between Mr. Belli and Mr. Tonkoff subsequent to Mr. Belli's abrogation, save for the forwarding fee arrangement. Such an arrangement, being in violation of (CPR) DR 2–107(A) is neither enforceable by itself nor

---

[6]*See also* (CPR) DR 2–103(B) which states, in part: "[A] lawyer shall not compensate or give anything of value to a person or organization to recommend or secure his employment by a client, or as a reward for having made a recommendation resulting in his employment by a client."

against Mr. Tonkoff's successors in interest.
Judgment of the Superior Court is affirmed.

GREEN and MUNSON, JJ., concur.

Reconsideration denied August 26, 1981.

Review granted by Supreme Court November 19, 1981.