[No. 51146–2.  En Banc.  January 16, 1986.]

KAY MCNEARY, ET AL, *Plaintiffs,* v. AMERICAN CYANAMID COMPANY, ET AL, *Defendants,* DANIEL F. SULLIVAN, *Appellant,* ERROL K. KANTOR, ET AL, *Respondents.*

*Edwards & Barbieri,* by *Malcolm L. Edwards* and *Catherine Wright Smith,* for appellant.

*Sweet, Dussault, Neff & Gibbs, P.S.,* and *John W. Sweet,* for respondents.

UTTER, J.—This case arises from a dispute between two law firms over division of a contingent fee paid for their successful efforts on behalf of Kay McNeary in a personal injury case. Although the two law firms entered into a retainer agreement intending to divide the work and the fee equally, one firm tried the case and performed almost all of the work necessary for trial. The Seattle firm of Daniel F. Sullivan appeals from a trial court ruling declaring the fee agreement voidable under CPR DR 2–107 and awarding his law firm 60 percent of the fee; the Minneapolis law firm of Kantor & Rubin cross–appeals for fee division pursuant to the retainer agreement. Over $165,000 of disputed funds, including interest, are presently held in an account at Foster & Marshall Company of Seattle. Also at question is whether the parties agreed to a contract setting aside a portion of the contingent fee for a cost reserve fund for the Sullivan firm. We reverse and remand the entire matter for trial.

Kantor & Rubin and the firm of Daniel F. Sullivan served as cocounsel for claimant Kay McNeary in her

action against American Cyanamid Company, Lederle Laboratories, the State of Washington, and King County. Mrs. McNeary's polio was caused by contact with her infant daughter, who had been inoculated with a live vaccine at a health clinic in Seattle. King County did not warn Mrs. McNeary of the danger inherent in live vaccine and she was struck with polio while traveling from her Seattle home to Minneapolis in December 1976. She is now a paraplegic.

Mrs. McNeary was hospitalized in Minneapolis for 6 months. During that time, her family consulted Kantor & Rubin about the possibility of filing a lawsuit. The firm, with established ties to Mrs. McNeary's family, had no experience in drug product liability cases. Nevertheless, in February 1977, Mrs. McNeary signed a retainer agreement with the Kantor firm. Under this agreement the McNearys were responsible for costs and would pay one–third of any recovery as a contingent fee.

Kantor then contacted the law firm of Daniel F. Sullivan in Seattle. Sullivan has specialized in medical negligence and drug and product liability cases for over 20 years and has earned an excellent reputation in this field. In early March 1977, Kantor and Sullivan met and discussed the McNeary case. Following their discussion, Kantor decided to retain control of the case.[1] In preparing the case, he investigated facts and theories relating to breach of duty, causation and damages, collected evidence and medical witnesses and conferenced with several plaintiffs' attorneys who had successfully prosecuted similar claims. After Kantor received an offer of only $25,000 in response to a settlement demand of $750,000 from the insurer for one of the government defendants, he realized that "nothing was going to really happen until we got into court." Transcript of Proceedings, at 49.

---

[1]In a letter responding to Kantor, Sullivan wrote, "In view of the size and nature of the case, I do not blame you for holding on to it yourself. If you run into any trouble and need help out here, give me a call." Supplemental Clerk's Papers, at 23.

When he again contacted Sullivan in the summer of 1978 to discuss retaining Sullivan as Seattle counsel, Kantor had not yet commenced suit. Sullivan agreed to handle the litigation from Seattle and share the contingent fee equally with Kantor. Sullivan's firm also agreed to advance all additional costs.[2] As a result, Sullivan requested that the fee be raised to 40 percent.[3] At this stage of the proceedings, the firms contemplated that they would divide the work and responsibility equally, since Kantor was handling a similar case in Minneapolis. On August 22, 1978, the McNearys signed a new retainer agreement for the association of both firms, agreeing to pay a 40 percent contingent fee and costs.

The Sullivan firm filed an action in May 1979. Depositions were held across the country. A total of 311 pleadings were filed in the case. About a month before trial, Sullivan sent the McNearys a letter reiterating the terms and effect of the retainer agreement. In that letter, which he forwarded to Kantor & Rubin, Sullivan erroneously indicated the fee division was 60 percent to the Sullivan firm, 40 percent to Kantor. In addition to forwarding the McNeary letter to Kantor, Sullivan sent Kantor an additional letter in which he referred to a recent Washington Court of Appeals decision on fee splitting.

The decision Sullivan sent Kantor invalidated a referral fee agreement as violative of CPR DR 2–107.[4] *Belli v.*

---

[2]The Sullivan firm ultimately advanced over $53,000 in costs.

[3]The Sullivan firm normally allocates 7 percent of the recovery in personal injury cases where they advance costs to a reserve to meet client costs in future cases when they might not receive a favorable recovery. Sullivan Affidavit; Exhibit A–2, at 4. Under this procedure, only 33 percent of the recovery in the McNeary case would have been available to divide between the attorneys as legal fees.

[4]CPR DR 2–107 allows attorneys from different firms to divide legal fees only (1) with the client's consent after full disclosure, (2) if the division is proportionate to the services performed and responsibility assumed by each, and (3) the total fee does not clearly exceed reasonable compensation. The Rules of Professional Conduct, effective September 1, 1985, contains a different provision regarding division of fees between attorneys. *See* RPC 1.5(e)(2).

*Shaw,* 29 Wn. App. 875, 631 P.2d 980 (1981), *aff'd,* 98 Wn.2d 569, 657 P.2d 315 (1983). The plaintiff, Melvin Belli, brought an action for attorney fees against a Yakima law firm pursuant to a fee agreement allegedly made in 1959. After Belli introduced J. P. Tonkoff, the Yakima attorney, to his Arizona client, Belli's participation in the case was minimal. In 1963, Tonkoff and local counsel tried the case in Phoenix and won a $50,000 verdict which, on appeal, was reversed and remanded. In 1971, a second trial resulted in a $485,000 verdict. Neither Belli nor any of his associates took part in the second trial or the subsequent appeals. The Court of Appeals determined that, in light of the Code of Professional Responsibility requirement that "a lawyer fee division be made in proportion to services performed and responsibility assumed by each", Belli's participation did not justify the equal 3–way split called for in the fee agreement. *Belli v. Shaw,* 29 Wn. App. at 881.

Days before the McNeary trial, Sullivan wrote Kantor and questioned the distribution of fees. The trial began on March 29, 1982, and lasted 2½ weeks. Kantor was present for most of the trial, but at the request of the Sullivan firm did not sit at the counsel table. During the trial, Kantor conferred with the McNearys and Sullivan and assisted in the preparation of some witnesses.

The jury returned a verdict of $1,105,000 against American Cyanamid and Lederle Labs on April 15, 1982. The judgment was reduced by a $400,000 pretrial settlement Sullivan arranged with the government defendants. The plaintiffs settled the remaining amount for $555,000. Before accepting the settlement, the McNearys, as they had throughout the litigation, consulted with Kantor. The total attorneys' fee amounted to $382,000.

On April 21, 1982, about 1 week after the trial ended, Sullivan wrote Kantor suggesting that the firms submit the fee question to arbitration to avoid ethical concerns. In a separate letter that day, Sullivan sent Kantor a check for $26,000 "representing payment re attorneys' fees . . . subject to and pending arbitration." Appellant's exhibit 1,

at A4. Finally, in a letter dated May 3, 1982, Sullivan expressed his opinion that "[t]here is absolutely no question in my mind that the services that were performed and the responsibility assumed by your law firm did not equal 50% of the total services and responsibility." Supplemental Clerk's Papers, at 77. Neither firm kept time records. In an affidavit later submitted, however, Sullivan estimated that members of his firm had contributed 2,662 hours on behalf of the McNearys. Kantor & Rubin never submitted any estimate of hours expended in this case, but instead detailed the services they performed for the McNearys.

The fee dispute went to trial and the court rendered an oral decision and order for judgment on December 7, 1982. Although the trial judge found this case distinguishable from *Belli,* he nevertheless declared the fee division contract voidable in view of CPR DR 2–107. Dividing the legal fees "[b]ased upon the reasonable and proportionate value of the services performed and responsibility assumed by the associating attorneys," he awarded Kantor & Rubin 40 percent of the attorneys' fees recovered. Conclusion of law 4. He made no finding as to whether the client and attorneys agreed upon a contract allocating 7 percent of the contingent fee to a reserve fund maintained by the Sullivan firm to cover those cases where costs are advanced and no recovery is received.

The trial judge properly found this case distinguishable from *Belli.* This is not a simple referral case. The trial judge found that, after Kantor turned the case over to Sullivan, Kantor's firm "retained ongoing responsibility to the clients and rendered ongoing services in processing the handling [of] the case." Finding of fact 9.

Once an attorney does more than merely refer a case, courts diverge in their approaches to fee division. R. Aronson, *Attorney–Client Fee Agreements: Regulation and Review* 73 (1980); *compare Winterton v. Van Zandt,* 374 S.W.2d 631 (Mo. Ct. App. 1963) (apportioning fees based on services performed) *with Oberman v. Reilly,* 66 A.D.2d 686, 687, 411 N.Y.S.2d 23, 25 (1978) ("an agreement

between attorneys for division of a legal fee is valid and is enforceable . . . provided that the attorney who seeks his share of the fee contributed some work, labor or service toward the earning of the fee . . .").

We disagree with the New York approach. Although courts should not interfere in the agreements of competent parties unless illegal or in violation of public policy, *Redford v. Seattle,* 94 Wn.2d 198, 615 P.2d 1285 (1980), New York's analysis ignores the literal language of CPR DR 2–107. We believe the disciplinary rule indicates that division of fees by attorneys jointly participating in handling a case must take into account proportionate shares of services. *See* R. Aronson, *supra* at 73. To let an attorney refer a case to another, perform some initial services, and then receive half the fee allows avoidance of the rule and our holding in *Belli.*

On the other hand, CPR DR 2–107 should not mean that attorneys must "correlate each minute spent on a case to each penny earned therefrom in order to achieve proportionality between 'the responsibility assumed and services performed' on the one hand and each attorney's share of the fee on the other." *Fitzgibbon v. Carey,* 70 Or. App. 127, 137, 688 P.2d 1367 (1984), *review denied,* 298 Or. 553, 695 P.2d 49 (1985). This case aptly demonstrates that as a practical matter, it is extremely difficult for a trial court to independently assess the proportions of work performed and responsibility assumed, after the fact, in cases involving a joint representation agreement.

This agreement does not necessarily violate CPR DR 2–107. We agree with the Oregon Court of Appeals that "when there is a 'true division of services and responsibility,' a specific agreement to divide a contingency fee between associating attorneys may be enforced, even though it is claimed that the division is not directly proportional to the work performed by each." *Fitzgibbon v. Carey, supra* at 136. Therefore, where the trial court finds a substantial division of services or responsibility, the agreed division should control. *See Breckler v. Thaler,* 87 Cal.

App. 3d 189, 151 Cal. Rptr. 50, 55 (1978).

Here, however, there is no indication in the record on appeal whether there was a substantial division of services or responsibility. The trial court failed to set forth a basis for its 60/40 percent split of attorney fees. Its findings focus exclusively on Kantor's efforts. No findings of fact were made as to Sullivan's efforts. This was error.

Since division of fees between lawyers must be in proportion to services performed and responsibility assumed by each lawyer, CPR DR 2–107(A)(2), it is appropriate to look at CPR DR 2–106(B) for guidelines in determining the factors considered in establishing the reasonableness of a fee. *See Bowers v. Transamerica Title Ins. Co.,* 100 Wn.2d 581, 595–96, 675 P.2d 193 (1983). Those factors, which are similar to those used to determine the reasonable value of professional services in a quantum meruit claim, *Kimball v. PUD 1,* 64 Wn.2d 252, 257, 391 P.2d 205 (1964), are:

(B) . . . Factors to be considered as guides in determining the reasonableness of a fee include the following:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent.

CPR DR 2–106(B).

While these factors are not strictly applicable in determining the actual division of services and responsibility, they do provide the trial court guidelines for establishing the relative value of the services performed and responsi-

144

bilities assumed. Particularly relevant are factors (1), (4), (6), (7) and (8).

We appreciate the fact that our ruling in *Belli* left some doubt as to whether it should be applied to the facts in this case. Although *Belli* specifically addressed whether attorney forwarding fees are permitted in Washington, we also recognized that CPR DR 2–107 requires that fees be shared in proportion to the services performed by each lawyer. We therefore reverse the judgment and remand this matter to the trial court for additional findings, including whether the parties agreed to amend the contract setting aside a portion of the fee to a contingency reserve fund maintained by the Sullivan firm.

DOLLIVER, C.J., BRACHTENBACH, PEARSON, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., and HAMILTON, J. Pro Tem., concur.