# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Guardianship of | ) | NO. 68419-1-I |
| | ) | |
| ARTHUR D. HAYS. | ) | DIVISION ONE |
| | ) | |
| ARTHUR D. HAYS, | ) | |
| | ) | UNPUBLISHED OPINION |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| REBECCA CASTILLEJA, | ) | |
| | ) | |
| Respondent. | ) | FILED: August 26, 2013 |
| | ) | |

LEACH, C.J. — In this contested guardianship proceeding, Arthur Hays seeks review of three issues concerning the trial court's award of attorney fees and costs to the successful petitioner, Rebecca Castilleja. He challenges the reasonableness of the fee award, the court's decision to assess the entire award against his estate, and the court's decision to enter its judgment immediately. He also moves to supplement the record with the guardian's inventory report and budget. Because the trial court did not abuse its discretion in approving Castilleja's fee petition and in giving the guardian discretion to apportion the fee award and Hays did not timely appeal the court's decision to enter its judgment

immediately, we affirm. Because Hays's motion to supplement the record fails to meet RAP 9.11(a)'s requirements, we deny his motion.

FACTS

Arthur D. Hays accumulated substantial wealth operating a wholesale distributing business and acquiring real property to store his merchandise. He is the trustee and beneficiary of the Hays Family Trust. When his wife died in 1980, her estate was transferred into this trust. He has been the manager of Hays Elliott Properties LLC (HEP) since he created it in 1999. HEP owns and manages real property. In 2000, Hays created three irrevocable trusts. Each trust owns shares of HEP. Castilleja, Hays's daughter, became the successor trustee of each trust in 2008. Hays also maintains a collection of vintage vehicles and owns the Hays Distributing Corporation, a wholesale distributing business. Additionally, he owns property in Suquamish, Washington, that is part of the Hays Millers Bay Limited Partnership; a residence in the Magnolia neighborhood in Seattle; a condominium in the Alki area; and real estate on West Commodore Way. The case involves assets valued at approximately $28 million.

In March 2011, Castilleja filed a petition seeking the appointment of a guardian of Hays's estate. Hays's son Howard supported the guardianship, but Hays and his son Robert opposed it. On November 18, 2011, after a six-day bench trial, the trial court found Hays incapacitated as to his estate. The court

appointed an independent professional guardian, finding, "There is family conflict and all of Mr. Hays' children at any given time could stand to benefit from any decision or error that Mr. Hays might make, thus making appointment of a guardian independent of the family necessary."

In the November 18 order, the court also concluded that Castilleja should recover her reasonable costs and attorney fees incurred bringing the guardianship action. The court's order provides for the determination of the reasonableness of these fees "under the lodestar measure by separate motion." The court ordered the guardian to file an inventory of Hays's property within three months.

On February 1, 2012, the trial court entered a judgment in favor of Castilleja for $380,592.92, representing $352,755.36 in attorney fees and $27,837.56 in costs. The judgment authorized the guardian to pay it and provided for payment from "the guardianship estate and/or any other asset/entity in which Mr. Arthur Hays has a beneficial interest."

On February 29, Hays filed a notice of appeal, seeking review of both the February 1, 2012, order and designated portions of the November 18, 2011, order. On May 7, 2012, Hays filed a motion to supplement the record.

## STANDARD OF REVIEW

We apply a two-part standard to review a trial court judgment awarding attorney fees: "(1) we review de novo whether there is a legal basis for awarding attorney fees by statute, under contract, or in equity and (2) we review a discretionary decision to award or deny attorney fees and the reasonableness of any attorney fee award for an abuse of discretion."[1] The parties do not dispute the statutory basis[2] for the court's authority to award attorney fees. Thus, we apply the second part of this review standard.

When reviewing a trial court's decision for abuse of discretion, we will uphold the decision unless it is "'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'"[3] A court makes a manifestly unreasonable decision if it falls outside the range of acceptable choices, given the facts and the applicable legal standard; a court bases its decision on untenable grounds if the record does not support the court's factual findings; a

---

[1] Gander v. Yeager, 167 Wn. App. 638, 647, 282 P.3d 1100 (2012); see RCW 11.96A.150 (trial court and appellate court have discretion to order costs, including reasonable attorney fees, to be awarded to any party in guardianship matters); see also In re Estate of Black, 153 Wn.2d 152, 173, 102 P.3d 796 (2004) ("[RCW 11.96A.150] leaves the award of attorney fees to the discretion of the court, and we will not interfere with a trial court's fee determination unless 'there are facts and circumstances clearly showing an abuse of the trial court's discretion.'" (quoting In re Estate of Larson, 103 Wn.2d 517, 521, 694 P.2d 1051 (1985))).

[2] RCW 11.96A.150.

[3] Black, 153 Wn.2d at 172 (internal quotation marks omitted) (quoting State v. Downing, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004)).

court bases its decision on untenable reasons if it uses an incorrect standard or the facts do not meet the correct standard's requirements.[4]

## ANALYSIS

Hays claims that the trial court abused its discretion "(1) [b]y concluding that all of the petitioner's fees were reasonable; (2) by failing to properly articulate the basis for its decision; and (3) by failing to properly consider all relevant factors, including[] whether the particular actions taken by the petitioner's counsel benefitted Mr. Hays." We disagree.

Hays challenges the reasonableness of the attorney fee award on three grounds: (1) the court failed to make findings showing that it considered the factors in RPC 1.5(a), (2) the court failed to perform a lodestar analysis, and (3) the court failed to respond adequately to Hays's objections. We reject these arguments.

First, Hays claims that the trial court should have stated how the factors enumerated in RPC 1.5(a) affected its fee decision. RPC 1.5(a) states, in relevant part,

> The factors to be considered in determining the reasonableness of a fee include the following:
> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

---

[4] In re Marriage of Littlefield, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997) (citing State v. Rundquist, 79 Wn. App. 786, 793, 905 P.2d 922 (1995)).

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent; and

(9) the terms of the fee agreement between the lawyer and the client, including whether the fee agreement or confirming writing demonstrates that the client had received a reasonable and fair disclosure of material elements of the fee agreement and of the lawyer's billing practices.[5]

Specifically, Hays asserts that the court failed to apply the first, third, fourth, and seventh factors and that "had the trial court properly considered the relevant factors, it would have reached the inevitable conclusion that the total fees were excessive for the establishment of a guardianship of the estate." He bases this assertion upon the absence of any specific finding applying these factors. He contends that the case presented no novel issues about the establishment of a guardianship; that Castilleja's attorneys offered excessive and irrelevant evidence; that the participation of two attorneys produced an excessive combined hourly rate, although the individual rate for each attorney was reasonable; that counsel expended considerable time presenting irrelevant

---

[5] Hays cites the former rule, which contained only eight factors. The current rule includes nine factors.

evidence of assets Hays previously transferred to HEP, which had an operating agreement addressing the incapacity of its manager; and that Castilleja's attorneys should have been more efficient because of their experience in guardianship law and "excellent reputations" in providing representation in guardianship proceedings.

Hays cites In re Guardianship of Hallauer[6] to support his contention, but he cites the plaintiff's argument in the case rather than the court's holding. In fact, in Hallauer, we cited our Supreme Court's unanimous decision in McNeary v. American Cyanimid Co.,[7] that to determine whether attorney fees are reasonable, the factors in RPC 1.5(a) "should be used as 'guidelines.'"[8] More recently, in Mahler v. Szucs,[9] our Supreme Court held, "[C]ourts should be guided in calculating fee awards by the lodestar method in determining an award of attorney fees as costs." Additionally, "[t]his methodology can be supplemented by an analysis of the factors set forth in RPC 1.5(a) which guide members of the Bar as to the reasonableness of a fee."[10] RCW 11.96A.150 governs attorney fee awards in guardianship proceedings. It states, "In exercising its discretion under this section, the court may consider any and all factors that it deems to be

---

[6] 44 Wn. App. 795, 723 P.2d 1161 (1986).
[7] 105 Wn.2d 136, 143, 712 P.2d 845 (1986).
[8] Hallauer, 44 Wn. App. at 799-800.
[9] 135 Wn.2d 398, 433, 957 P.2d 632 (1998), overruled on other grounds by Matsyuk v. State Farm Fire & Cas. Co., 173 Wn.2d 643, 272 P.3d 802 (2012).
[10] Mahler, 135 Wn.2d at 433 n.20.

relevant and appropriate."[11] Because no authority requires the trial court to make findings demonstrating that it considered the factors in RPC 1.5(a), we find no error in its failure to do so.

The judgment also recites that the court considered "the attorneys' experience and the nature of the work performed" to conclude that the rates charged were reasonable. As part of its analysis of the reasonableness of the number of hours that counsel expended, the court considered "the results obtained, the work performed, and the contested nature of the proceedings." The trial court affirmatively found that the time expended did "not reflect any significant redundancy, waste or unnecessary services."

In Hays's second challenge to the fee award, he contends that the trial court failed to apply the lodestar method when determining if the requested attorney fees and costs were reasonable. He claims that the court "failed to properly articulate how it determined that the number of hours expended was reasonable." He further alleges, "It appears the trial court simply accepted the numbers stated by Mrs. Castilleja's counsel and signed the order, without any independent review of the reasonableness of amounts billed."

---

[11] RCW 11.96A.150(1).

Generally, Washington courts apply the lodestar method to calculate attorney fees.[12] The court awarding attorney fees makes its independent determination about the reasonableness of the fees requested.[13]

To apply the lodestar method, the court considers first the number of hours reasonably expended on the matter.[14] "'[T]he attorneys must provide reasonable documentation of the work performed.'"[15] This documentation must include at least (1) the number of hours worked, (2) the type of work performed, and (3) the category of attorney who performed the work.[16] The court does not need to conduct an hour-by-hour analysis of each lawyer's time sheets, so long as the court provides a consideration of the relevant factors and reasons sufficient to review the amount of the fee award.[17] "The awarding court should take into account the hours spent on unsuccessful claims, duplicated effort, or otherwise unproductive time."[18]

---

[12] Mahler, 135 Wn.2d at 433.

[13] McGreevy v. Or. Mut. Ins. Co., 90 Wn. App. 283, 291, 951 P.2d 798 (1998) (quoting Absher Constr. Co. v. Kent Sch. Dist. No. 415, 79 Wn. App. 841, 847, 917 P.2d 1086 (1995)), overruled on other grounds by Panorama Vill. Condo. Owners Ass'n Bd. of Dirs. v. Allstate Ins. Co., 144 Wn.2d 130, 26 P.3d 910 (2001).

[14] McGreevy, 90 Wn. App. at 291.

[15] McGreevy, 90 Wn. App. at 292 (quoting Bowers v. Transamerica Title Ins. Co., 100 Wn.2d 581, 597, 675 P.2d 193 (1983)).

[16] McGreevy, 90 Wn. App. at 292 (citing Bowers, 100 Wn.2d at 597).

[17] McGreevy, 90 Wn. App. at 292 (quoting Absher Constr. Co., 79 Wn. App. at 848).

[18] McGreevy, 90 Wn. App. at 292 (citing Bowers, 100 Wn.2d at 597).

As the second step in the lodestar method, the court determines if the hourly fee charged was reasonable.[19] The court computes the reasonable hourly rate for each attorney.[20] The attorney's usual fee is not conclusively reasonable but may require an adjustment.[21] The court may also consider "the level of skill required by the litigation, time limitations imposed on the litigation, the amount of the potential recovery, the attorney's reputation, and the undesirability of the case."[22] As a third step, the court multiplies those two numbers to produce the lodestar fee.[23]

Finally, the court may adjust the lodestar amount up or down to reflect factors not already considered.[24] The party proposing a deviation from the lodestar amount bears the burden of justifying it.[25]

Here, Hays vigorously challenged Castilleja at each stage of the proceedings. The trial court's November 18 order includes 68 findings of fact and 11 conclusions of law, which provides some indication of the complexity of the contested issues. In the February 1 order, the court stated, "To assess the reasonableness of the attorneys' fees requested by the Petitioner, the Court

---

[19] McGreevy, 90 Wn. App. at 291.

[20] McGreevy, 90 Wn. App. at 293 (citing Bowers, 100 Wn.2d at 597).

[21] Bowers, 100 Wn.2d at 597.

[22] Bowers, 100 Wn.2d at 597.

[23] McGreevy, 90 Wn. App. at 291.

[24] Bowers, 100 Wn.2d at 598-99.

[25] Bowers, 100 Wn.2d at 598 (quoting Copeland v. Marshall, 641 F.2d 880, 892 (D.C. Cir. 1980)).

employed the lodestar methodology, multiplying the attorney's and support staff's hourly rates by the reasonable number of hours of work performed." The court concluded that the number of hours, 1025.25, "was reasonable considering the results obtained, the work performed, and the contested nature of the proceedings, as set forth in the contemporaneous billing records and declaration filed in support." Additionally, the court found the attorneys' hourly rates, $350 and $300, reasonable, "considering the attorneys' experience and the nature of the work performed." As previously noted, the court determined, "The billing records do not reflect any significant redundancy, waste or unnecessary services."

At oral argument, counsel for Hays agreed that the billing records do not reflect any unnecessary work or excessive time spent on necessary work. He also characterized Castilleja's attorneys as "very ethical and very honest" and stated that he "had a very high opinion of the services they provide."

To perform its supervisory function, the trial court must make findings of fact and conclusions of law.[26] Because the court made the findings required under the lodestar method and because the court's findings support its conclusions of law and decision, we conclude that the trial court applied the lodestar method correctly.

---

[26] Mahler, 135 Wn.2d at 435.

In Hays's third challenge, he contends that the court did not adequately consider his objections to the petition: "Rather than engaging in a substantive analysis, the trial court simply concluded that all fees were reasonable. The trial court should have entered findings indicating its consideration of and conclusions regarding the following specific objections raised by Mr. Hays." Hays objected on five grounds: (1) fees incurred in presenting evidence on "irrelevant issues" and pursuing unsuccessful claims; (2) fees incurred from the presence of two attorneys at trial; (3) fees incurred seeking discovery from Hays's former and current attorneys; (4) "vague or block billings that make it difficult or impossible . . . to determine whether the fees relate to the successful claims"; and (5) "unnecessary costs," including costs for "computerized legal research."

In the February 1 order, the trial court made a number of findings of fact and conclusions of law. The court found that "[t]he billing statements were sufficient and not vague"; "[t]he attorneys' fees and costs itemized in the billing statements were reasonable and necessary, and should be approved"; "[t]he billing records do not reflect any significant redundancy, waste or unnecessary services"; and "[t]he court specifically rejects the arguments made by Mr. Hays re[garding] the reasonableness of the fees or the manner in which the case was presented."

Hays claims that In re Guardianship of Ivarsson[27] requires the trial court to undertake a "substantive analysis . . . which culminates in an explicit finding that the requested fees are reasonable in the circumstances of the particular case." Hays also relies upon Absher Construction Co. v. Kent School District No. 415,[28] which states, "The court may discount hours spent on unsuccessful claims, duplicated effort, or otherwise unproductive time." Additionally, Hays argues that the fee petition "failed to segregate those fees incurred to establish a guardianship of the estate from those incurred on all other issues, including Mr. Hays' prior estate planning, his management of HEP, and distributive issues discussed prior to the guardianship." Finally, Hays cites In re Estate of Larson[29] to argue that the attorney fee award may not include "fees incurred in seeking payment of or defending objections to approval of fees."

The trial court did not abuse its discretion when it rejected Hays's objections to Castilleja's fee petition. Hays cites no authority that requires the court to make a written finding stating its rationale for approving each specific item in the fee petition. Hays's reliance on Ivarsson is misplaced. In Ivarsson, the court denied a coguardian's request for attorney fees because the record contained only the attorney's time records. The court required additional

---

[27] 60 Wn.2d 733, 375 P.2d 509 (1962).
[28] 79 Wn. App. 841, 847, 917 P.2d 1086 (1995) (citing Bowers, 100 Wn.2d at 597).
[29] 103 Wn.2d 517, 694 P.2d 1051 (1985).

evidence of the services provided because "[t]he time required is only one factor in determining the reasonable value of services."[30] Here, the record contains contemporaneous billing statements describing the work that the attorneys performed. Additionally, Absher Construction Co. does not require the court to discount certain hours. Again, RCW 11.96A.150(1) gives the court discretion to decide what factors to consider, and counsel for Hays agreed at oral argument that Castilleja's attorneys performed no unnecessary work or spent excessive time on necessary work.

Further, it is well settled that if a statute is inconsistent with the common law, the statute abrogates the common law.[31] Larson held that "an attorney in probate is not entitled to additional fees for attorneys and experts in proving the reasonableness of his fee in the final report."[32] But RCW 11.96A.150 gives the trial court broad discretion to include such fees in the award in an equitable manner. To the extent that Larson conflicts with the court's discretion under RCW 11.96A.150, the statute has abrogated that holding.[33] Moreover, in Absher Construction Co., we approved computer research expenses, concluding, "The use of computer-aided legal research is a norm in contemporary legal practice.

---

[30] Ivarsson, 60 Wn.2d at 744.
[31] State v. Butler, 126 Wn. App. 741, 750, 109 P.3d 493 (2005).
[32] Larson, 103 Wn.2d at 533.
[33] See In re Estate of Bockwoldt, 814 N.W.2d 215, 225 (Iowa 2012) (recognizing abrogation).

Properly utilized, it saves the client attorney fees which would otherwise be incurred for more time consuming methods of legal research."[34]

The trial court provided an adequate record for us to review its reasoning for approving the fee petition. Because the court's assessment was not manifestly unreasonable or based on untenable grounds or reasons, we hold that the February 1 order adequately addressed Hays's objections.

In addition to challenging the reasonableness of the attorney fees, Hays claims that the trial court abused its discretion by failing "to properly apportion what fees are to be paid by Mrs. Castilleja, by Mr. Hays and by the other entities benefitted," including Hays's limited liability company and the trusts. He asserts that "[t]he only fees and costs properly assessed against Mr. Hays are those that were incurred in seeking the appointment of a guardian of the estate." Specifically, Hays contends that he should not be responsible for fees incurred before the guardianship proceeding commenced, fees that the attorneys incurred in recovering their fees and costs, and fees incurred after the guardianship was established because he claims that those actions did not benefit him.

In In re Estate of Black,[35] the court stated,

> The touchstone of an award of attorney fees from the estate is whether the litigation resulted in a substantial benefit to the estate. This does not mean that attorney fees may never be

---

[34] Absher Const. Co., 79 Wn. App. at 849.
[35] 116 Wn. App. 476, 490, 66 P.3d 670 (2003) (internal citations omitted).

appropriately awarded against an estate if the estate is not substantially benefited. There is no firm rule. . . . The trial court must evaluate the particular action to determine if its benefit to the estate was substantial.

But RCW 11.96A.150(1) states,

Either the superior court or any court on an appeal may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party: (a) From any party to the proceedings; (b) from the assets of the estate or trust involved in the proceedings. . . . The court may order the costs, including reasonable attorneys' fees, to be paid in such amount and in such manner as the court determines to be equitable. In exercising its discretion under this section, the court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved.

In the November 18 order, the trial court stated, "The Petitioner's request for fees is governed by RCW 11.96A.150." It concluded, "The court finds that it is equitable to award Petitioner her reasonable costs and attorneys' fees to be paid from the guardianship estate and/or any other asset/entity in which Mr. Arthur Hays has a beneficial interest." The court noted, "[T]he petition for guardianship was filed in good faith, was necessary to protect Mr. Hays' assets and property interests, and benefitted Mr. Hays' estate by resulting in the appointment of a guardian of the estate of Mr. Hays." On the court's February 1 order approving the fee petition, the judge wrote, "The fees and costs may be allocated to Hays Elliott Properties LLC, Hays Distributing Corp., and Arthur D. Hays individually as determined by the guardian."

-16-

We do not accept Hays's arguments. While Hays concedes that the limited liability company and the trusts were not parties to the guardianship proceedings, he argues that the fact they benefitted from the guardianship warrants apportioning some of the fees and costs to those entities. Hays cites In re Guardianship of McKean[36] for the notion that "it is appropriate to allocate fees 'amongst those who created the need for the guardianship.'" But, in McKean, the Court of Appeals concluded that the trial court ordered a party to pay the guardianship's attorney fees simply "because the guardianship could not."[37] In that case, the trial court acted improperly because "the simple ability to pay does not provide an equitable basis for the award. Rather, equity requires some finding of fault that in fairness requires a party to pay."[38] As an example, the court cited Gillespie v. Seattle-First National Bank,[39] where the court concluded that even absent bad faith or self-dealing, it was equitable to assess attorney fees against the trustee where, but for its breach of fiduciary duty, the beneficiaries would not have needed to incur the fees. Here, no evidence suggests any fault as to the other entities. Accordingly, the court did not err by giving the guardian discretion to allocate the fees and costs.

---

[36] 136 Wn. App. 906, 920, 151 P.3d 223 (2007).
[37] McKean, 136 Wn. App. at 920.
[38] McKean, 136 Wn. App. at 920.
[39] 70 Wn. App. 150, 177-78, 855 P.2d 680 (1993); see also McKean, 136 Wn. App. at 920.

Hays claims that fees incurred "when matters other than guardianship were being explored" provided no benefit to his estate. This argument conflicts with RCW 11.88.090(5)(f)(iv), which requires the guardian ad litem to investigate alternatives to guardianship.

Hays also cites Larson, In re Estate of Riemcke,[40] and In re Guardianship of Adamec[41] to support his claim that attorneys may not recover fees incurred in seeking fees. These cases do not apply here. As discussed above, RCW 11.96A.150 abrogated Larson. Riemcke held that a personal representative cannot collect attorney fees to the extent that the representative incurred the fees to protect his or her own interests as a beneficiary of the estate and not in furtherance of its administration.[42] Hay identifies no evidence showing that Castilleja benefitted in such an individual capacity. Adamec concerned a guardian seeking fees under RCW 11.92.180,[43] which does not apply here. The "fees incurred after the guardianship" concerned the attorneys' discussions with their client. Despite Hays's assertion, no evidence indicates that the matters they discussed were unrelated to establishing the guardianship or that the actions did not benefit the estate. The trial court properly exercised its discretion to

---

[40] 80 Wn.2d 722, 497 P.2d 1319 (1972).
[41] 100 Wn.2d 166, 667 P.2d 1085 (1983).
[42] Riemcke, 80 Wn.2d at 735-36.
[43] Adamec, 100 Wn.2d at 178-79.

determine the amount of and manner of paying the judgment. Therefore, we reject this claim.

In addition to these specific objections to the fee petition, Hays asserts for the first time on appeal that this court should deduct the specific fees he cites and then reduce the remainder by one half. He did not raise this argument in the trial court and he cites no authority to support it, so we decline to consider it.[44]

Hays also alleges that "it was inequitable for the court to direct entry of a judgment, with interest accruing at 12%, immediately, thereby unnecessarily depleting Mr. Hays' estate." He argues that the court's actions were improper because (1) "Mr. Hays does not have sufficient cash assets with which to pay the fees and he no longer has control of his assets" and (2) the court "should have exercised its discretion as to 'the manner of payment' of the approved fees under RCW 11.96A.150 to delay entry of the judgment at least until the guardian's inventory and petition for order authorizing disbursements was presented and approved."

With the exception of Hays's challenge to the interest on the judgment, as to this claim his appeal is untimely. Under RAP 2.2(a)(1), a party has a right to appeal a final judgment "regardless of whether the judgment reserves for future

---

[44] See RAP 2.5(a) ("The appellate court may refuse to review any claim of error which was not raised in the trial court.").

determination an award of attorney fees or costs."[45] RAP 5.2(a) requires filing a notice of appeal within 30 days after the trial court enters its decision. While RAP 2.4(b) allows a party to timely appeal a trial court's attorney fee decision, it "makes clear that such an appeal does not allow a decision entered before the award of attorney fees to be reviewed (i.e., it does not bring up for review the judgment on the merits) unless timely notice of appeal was filed on that decision."[46]

Here, Hays filed a notice of appeal more than 30 days after the court entered a judgment granting Castilleja's fee request but within 30 days of its decision approving her fee petition. Because Hays's notice of appeal challenging the court's decision to assess attorney fees against him was untimely, we do not address it.

Although Hays timely challenges the interest on the judgment, his claim lacks merit. Under RCW 4.56.110(4), "judgments shall bear interest from the date of entry." RCW 19.52.020(1)(a) sets the interest amount at 12 percent per annum. Therefore, the court properly ordered that the principal judgment bear interest at 12 percent per annum.

---

[45] Carrara, LLC v. Ron & E Enters., Inc., 137 Wn. App. 822, 825, 155 P.3d 161 (2007).

[46] Carrara, 137 Wn. App. at 825.

Based on his claim that the trial court should have delayed entering a judgment against him, Hays filed a motion to supplement the record to include the guardian of the estate's inventory report and budget. He argues that these documents are necessary to determine (1) whether the court should have ordered him to pay all of Castilleja's fees and costs, without allocating them to other entities, and (2) whether the court should have entered a judgment against him before he demonstrated an ability to pay the judgment.

RAP 9.11(a) permits this court to allow a party to supplement the record where the party establishes each of six criteria, including, "the additional evidence would probably change the decision being reviewed."[47] First, Hays offers no reason that the inventory report and budget would probably change the decision to enter a judgment against Hays's estate and give the guardian discretion to allocate the payment of the judgment; rather, he merely contends

---

[47] The six criteria are

(1) additional proof of facts is needed to fairly resolve the issues on review, (2) the additional evidence would probably change the decision being reviewed, (3) it is equitable to excuse a party's failure to present the evidence to the trial court, (4) the remedy available to a party through postjudgment motions in the trial court is inadequate or unnecessarily expensive, (5) the appellate court remedy of granting a new trial is inadequate or unnecessarily expensive, and (6) it would be inequitable to decide the case solely on the evidence already taken in the trial court.

RAP 9.11(a).

that the documents are "necessary to resolve the issues" that he asserts on appeal. The remainder of his motion asks us to revisit the trial court's November 18 judgment that he does not timely challenge. Because Hays fails to establish all of the requirements in RAP 9.11(a), we deny his motion to supplement the record.

Both parties request costs and attorney fees incurred on appeal. Because Castilleja is the prevailing party, she filed the petition for guardianship in good faith, the guardianship benefitted Hays, and she did not file the petition out of personal interest or for personal gain, we award her costs and reasonable attorney fees under RAP 18.1 and RCW 11.96A.150.

## CONCLUSION

Because the trial court did not abuse its discretion in awarding attorney fees and costs and acted within its discretion to order Hays's estate to pay the entire award and because Hays did not timely appeal the court's judgment assessing fees against his estate, we affirm the trial court's February 1 order and award costs and reasonable attorney fees incurred on appeal to Castilleja upon

her compliance with applicable court rules.   Because Hays fails to meet RAP 9.11(a)'s requirements, we deny his motion to supplement the record.

_Leach, C.J._

WE CONCUR:

_Becker, J._

_Grosse, J._