[No. 18239-4-II.   Division Two.   June 21, 1996.]

RICHARD C. GOSSETT, ET AL., *Respondents*, v. FARMERS INSURANCE COMPANY OF WASHINGTON, *Appellant*.

*Mark S. Cole, Thomas Lether, Mark E. Mills*, and *Clarke, Bovingdon & Cole*, for appellant.
*Gary Williams*, for respondents.

HOUGHTON, A.C.J. — Farmers Insurance Company of

Washington (Farmers) appeals from an award of attorney fees and a partial summary judgment that Richard and Margaret Gossett had a limited insurable interest under a homeowner's policy issued by Farmers. The Gossetts cross-appeal, arguing that the trial court erred in limiting their insurable interest to the value of repairs and improvements. We affirm the trial court's award of attorney fees and its ruling that the Gossetts had an insurable interest, but reverse and remand on the issue of limitation of the insurable interest.

## FACTS

The Gossetts found an unfinished house for sale at a "bargain price". The house was located at 14402 11th Avenue East in Tacoma. Richard Gossett is a construction superintendent for a contractor and is also a carpenter. The Gossetts intended to buy the house, move in, and finish it and sell it at a profit. The Gossetts offered $90,000 for the house and determined they would need an additional $60,000 or $70,000 to finish the house.

The Gossetts' $90,000 offer was accepted after two prior offers expired. The Gossetts had difficulty obtaining financing through conventional sources due to Richard Gossett's prior bankruptcy and a tax lien and because the house was unfinished. They eventually signed a fee agreement with Trusty Deed Services, Inc. (Trusty), a mortgage broker that "specialized in . . . hard to place loans." Because a loan through one source would not be available before the August 30, 1990 closing date, and the Gossetts believed they would lose the sale to the offer behind theirs, they assigned their interest in the earnest money agreement to Trusty. Trusty borrowed $100,000 from Cynthia Crennell in order to lend the Gossetts money to close the sale.

The Gossetts and Trusty agreed that the Gossetts would pay Trusty when they obtained long-term financing and Trusty would use those funds to repay Crennell. Trusty took title to the property in order to facilitate the sale and

to protect Crennell, but did not intend to buy or become record owner of the property. The Gossetts had to repay a total of $109,000 by October 4, 1990. The sale closed on September 5 and Trusty was named as the buyer. The seller conveyed title to Trusty.

The Gossetts moved into a motel while they worked on the house. They moved some of their belongings into the house and one of their sons slept there to watch over things. They began working on the house in early September 1990. Richard Gossett and his sons did most of the work, including work on the roof, wiring, plumbing, and adding a garage.

Jim Hecker, a Farmers agent, contacted the Gossetts and they obtained homeowners' insurance in late August. The Gossetts told Hecker they owned the property. Farmers later contacted them in September and raised the amount of insurance from approximately $350,000 to $437,000. The policy was issued to the Gossetts as insured and to Trusty as mortgagee. Hecker stated that the Gossetts did not tell him that Trusty held title to the property and he assumed the Gossetts were the title holders because they were seeking insurance. He stated that, had he known Trusty held title and not the Gossetts, the policy would not have been issued.

On November 16, the electricity and heat were turned on and the Gossetts planned to move in the following Monday. Richard Gossett was at the house on Sunday night, November 18, installing light fixtures in a stairway. He fell off a ladder onto a plastic container of kerosene that was next to a space heater. Even though the heat was on, the space heater was being used to help dry the house. The ladder knocked over the space heater, which started a fire.

Richard Gossett drove to a neighbor's to telephone 911 dispatch. He returned to the house to wait for the fire department and to see if he could salvage anything, but

found the living room was "engulfed in flames."[1] The Gossetts went to Disney World on November 20 (having previously purchased non-refundable tickets), and stayed for about 10 days.

Richard Gossett stated that he obtained a long-term mortgage and a loan for the construction costs through George Moore and Associates. However, there was no written loan agreement. This loan did not come through before the fire. After the fire, Trusty was able to make only a partial payment of $5,000 to Crennell. Trusty assigned its rights under the insurance policy to Crennell and delivered a Deed of Trust on the property to Crennell. Crennell ultimately obtained a judgment against Trusty for the amount due on the note.

Both the Gossetts and Trusty made claims under the insurance policy. Farmers paid the Gossetts for the loss of contents and personal property. Farmers also tendered a $114,818.00 check, naming Crennell, Trusty and the Gossetts as payees. Crennell, Trusty and the Gossetts eventually entered into a settlement agreement in November 1991, whereby upon deposit of the Farmers' check, receipt of $5,000 from the Gossetts, a quit-claim deed and other documents from Crennell and a quit-claim deed from Trusty, $115,818.00 would be paid to Crennell, and $4,000 to Trusty.

The Gossetts filed suit in October 1991, seeking a money judgment for damage to the dwelling and for loss of use. Farmers alleged that the Gossetts did not have an insurable interest, or in the alternative, any recovery would be limited as to an insurable interest. Farmers also asserted that the insurance policy was issued upon mistaken facts regarding ownership of the property and that the policy should be reformed.

Both parties moved for summary judgment on the issue of insurable interest. The trial court granted the Gossetts'

---

[1]Gossett was convicted of attempted arson in 1982. He had hired someone to burn down his house, but did not collect from the insurance company.

motion, but limited their insurable interest to the value of their improvements. The trial court denied the Gossetts' motion for reconsideration.

The Gossetts' claim for improvements to the structure, including debris removal and additional living expenses, totaled $130,333.40. They asserted that most of the documentation pertaining to improvements was destroyed in the fire and they were unable to substantiate this amount. The Gossetts subsequently revised the amount to $47,375.86.

The parties eventually settled all claims, but the Gossetts reserved the right to appeal the issue of insurable interest. The trial court awarded attorney fees to the Gossetts to the extent the fees were incurred to establish coverage. The trial court used the lodestar fee calculation, and determined $25,912.50 was expended to establish coverage.

## ANALYSIS

### I. Farmers' Appeal

When reviewing a summary judgment, an appellate court engages in the same inquiry as the trial court. *Nationwide Mut. Fire Ins. Co. v. Watson*, 120 Wn.2d 178, 186, 840 P.2d 851 (1992). Summary judgment is proper if the pleadings, depositions, and affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Watson*, 120 Wn.2d at 186; CR 56(c). "The court must consider the facts submitted and all reasonable inferences from those facts in the light most favorable to the nonmoving party and the motion should be granted only if, from all the evidence, reasonable persons could reach but one conclusion." *Watson*, 120 Wn.2d at 186.

Farmers contends that under the policy, the Gossetts' recovery was limited to the amount of their insurable interest in the property at the date of the loss, and that because Trusty owned the property at the time of the fire,

the Gossetts had no lawful and substantial interest in it. Farmers asserts that it is irrelevant that the Gossetts later obtained title.

Farmers asserts that the Gossetts had no lawful and substantial interest in the property because they did not have title, ownership interest, partial interest such as a lien or judgment, a contractual agreement with Trusty to buy the property, or a construction contract. Farmers also asserts that possessions of the property did not create an insurable interest. It argues that the Gossetts were allowed to use the property to store belongings without protest from the owners, and thus were "merely gratuitous occupants," but that they had no enforceable right to possession.

In addition, Farmers contends that the risk of loss was on Trusty rather than on the Gossetts, and that the Gossetts had no obligation to purchase insurance, no obligation to repair or replace the property in the event of loss, and could have abandoned the property at any time.

■ In general, one has an insurable interest in property if one would profit or enjoy some advantage by its continued existence and would "suffer some *loss or disadvantage* by its destruction." 3 GEORGE J. COUCH, COUCH ON INSURANCE § 24:13 (2d ed. 1984). (Emphasis ours). An insurable interest is defined as "any lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage." RCW 48.18.040(2). Any legal or equitable interest or expectancy will suffice to create an insurable interest. *Cope Constr. Co. v. American Home Assurance Co.*, 28 Wn. App. 38, 45, 622 P.2d 395 (1980), *review denied*, 95 Wn.2d 1023 (1981).

Farmers cites no case that specifically holds that an insurable interest is dependent upon title. To the contrary, if a loss or disadvantage is sustained, it is immaterial whether the person has title in, a lien upon, or possession of the property. 3 COUCH ON INSURANCE § 24:13.

This is a case of first impression in Washington. We

therefore engage in a review of cases from other jurisdictions. Other courts have held that possession of title is not determinative. *See Hartford Fire Ins. Co. v. Stanley*, 644 S.W.2d 628, 629 (1983) (passage of title to machine did not destroy insurable interest; as long as plaintiff was legally liable for purchase price, he had insurable interest); *Aetna Ins. Co. v. King*, 265 So.2d 716, 718 (1972) (insurable interest is not determined by concept of title, but by whether insured has substantial economic interest in the property). Furthermore, a mortgagor has an insurable interest in the mortgagor's property regardless of the nature of title because a right of redemption accompanies the mortgage, and the mortgagor is interested in preservation of the mortgaged property. 3 COUCH ON INSURANCE § 24:69.

*Pressley v. American Casualty Co.*, 14 N.C. Super. 561, 188 S.E.2d 734, *cert. denied*, 281 N.C. 623, 190 S.E.2d 466 (1972), cited by Farmers, is distinguishable. In *Pressley*, the Treadaways held title to property and obtained fire insurance for a home located on the property. The Treadaways transferred title to the property to the Pressleys prior to a fire. They claimed they told the insurer's agent about the transfer, but the agent had no record of it. At the time of the fire, title to the property was in the Pressleys' name and insurance was in the Treadaways' name. On appeal from summary judgment, the court held that neither party could recover under the policy.

Here, Trusty held title in order to protect its lender and did not intend to become record owner. Trusty did not obtain fire insurance. The Gossetts obtained the insurance and the policy named the Gossetts as insureds and Trusty as the mortgagee. In *Pressley*, there was no indication that either party had a security interest in the property. Farmers' interpretation would create an absurd result; i.e., if a homeowner and a secured party were both named on a policy, and the secured party held title, neither party would be able to recover on the policy.

Farmers' other cited cases are also distinguishable. *Tyree v. General Ins. Co.*, 64 Wn.2d 748, 752, 394 P.2d 222

(1964) (recovery was properly limited to insurable interest in right to occupy premises under sublease, but no rights in expectation because application to purchase bakery addition from government was denied); *Davis v. Oregon Mut. Ins. Co.*, 71 Wn.2d 579, 582, 429 P.2d 886 (1967) (no recovery under policy where homeowner transferred entire interest in property before fire insurance policy expired and because fire insurance contract is personal, does not run with the land, and policy clearly provided assignment of rights is not valid without consent of insurer).

The circumstances in *Filiatreau v. Allstate Ins. Co.*, 358 S.E.2d 829 (1987), are closer to the facts of this case. In *Filiatreau*, the plaintiff contracted to buy a building. He obtained fire insurance prior to closing and the building was destroyed by fire prior to closing. The plaintiff purchased the damaged property, made repairs, and filed a claim for the amount of the insurance binder, which was denied. The trial court granted summary judgment in favor of the plaintiffs for the face amount of the policy. On appeal, the court held that because the plaintiff had contracted to purchase the property, he had equitable title to the property, amounting to an insurable interest. *Filiatreau*, 358 S.E.2d at 831. The court also determined that he had an insurable interest because he had a risk of pecuniary loss having paid a down payment, arranged for financing, and anticipated rental income from the property. However, the court noted that several factors, including misrepresentation, could affect the valuation of a policy under the " 'valued policy' " statute. *Filiatreau*, 358 S.E.2d at 831-32. The court determined there was an issue of fact concerning misrepresentation and reversed and remanded. *Filiatreau*, 358 S.E.2d at 833.

Farmers also contends that the Gossetts did not have an insurable interest to the extent of improvements because the improvements became the property of Trusty, and the Gossetts had neither a right to obtain compensation for the work done, nor an obligation to repair or replace the improvements if they were destroyed. Farmers argues in

the alternative that, if the Gossetts had an insurable interest, it was limited to the amount of improvements, because anything more would constitute a windfall.

There is nothing in the record to support Farmers' contention that the Gossetts were mere "gratuitous occupants." Our review of the record indicates that the Gossetts intended to buy the unfinished house, live in it while they finished it, and eventually sell it at a profit. Both Trusty and Crennell quit-claimed to the Gossetts when they were paid by Farmers. There is no indication that the Gossetts made improvements as a voluntary contribution to Trusty or obtained insurance as a gift to Trusty.

The Gossetts claim that they had an insurable interest in the full value of the house. They concede that Trusty also had an insurable interest and that the amount to be paid under the policy is limited to a party's interest or the applicable limit of insurance. They assert that their interest included the value of the improvements and repairs made prior to the fire, the amount of the loan between Trusty and Gossett, and the balance of the insured value of the house.

The Gossetts had an insurable interest at least for the amount of repairs and improvements, as the trial court determined. They intended to obtain financing to buy the house and finish it in order to sell it at a profit. Thus, they had an insurable interest pursuant to RCW 48.18.040 in that they had a substantial economic interest in the safety or preservation of the house, free from loss or pecuniary damage. They also had an expectation under *Cope Constr.*, 28 Wn. App. at 45, since they expected to make a profit on the house. There is no indication in the record that Trusty, a mortgage broker, intended to buy an unfinished house or that it took title other than for security reasons.

■ However, there is a genuine issue of material fact as to whether the Gossetts had an insurable interest beyond the improvements, and to what extent. Because the Gossetts had an expectation, the difference between the value of the house at the time of loss and the expected value

when finished must be determined. Therefore, we remand for trial.

Farmers also contends that the insurance policy should be reformed. This argument is without merit. Farmers claims that it issued the policy under the mistaken belief that the Gossetts would take title and become the owners of the property and argues that the policy should be reformed to replace the Gossetts' names, as the insured, with Trusty, which had ownership. However, this was clearly not the intent of the parties, as Trusty quit-claimed to the Gossetts after it was paid by Farmers. Furthermore, Farmers cites no authority for this argument.

## II. Gossetts' Cross Appeal

The Gossetts first contend that the trial court erred in limiting their insurable interest to the cost of improvements to the property. Having determined that there is a genuine issue of material fact warranting remand for jury trial, this issue has been addressed above.

The Gossetts next contend that because Farmers did not return the unearned premium, Farmers is estopped from denying coverage on grounds that the Gossett's misrepresented material facts.[2] Farmers asserts that it never denied coverage on misrepresentation or any other grounds and that the policy was procured under mistake of fact.

■ An insurer claiming a policy was never effected due to fraud or misrepresentation on the part of the insured must, as a condition precedent, tender back the premium. *Glandon v. Searle*, 68 Wn.2d 199, 204, 412 P.2d 116 (1966). An insurer asserting lack of coverage based upon misrepresentation must tender the premium when the defense is raised, or it loses the defense. *Queen City Farms, Inc. v. Central Nat'l Ins. Co. of Omaha*, 64 Wn. App. 838, 873, 827 P.2d 1024 (1992).

---

[2]The Gossetts' policy was continued to the end of the term and Farmers did not refund any premiums to the Gossetts. Farmers offered to renew the policy, insuring the building for $437,000 in August 1991.

▉ In *Filiatreau,* the court addressed a misrepresentation issue. It held that an insurer is obligated to attempt to ascertain the insured's interest in the property before issuing a policy. It cannot therefore, issue a policy, collect premiums, and later complain that the insured's interest is overvalued due to an omission by the insured. *Filiatreau,* 358 S.E.2d at 832. According to the court, an insurer waives its right to challenge an alleged misrepresentation if it does not make some reasonable investigation as to the extent of an insured's interest. *Filiatreau,* 358 S.E.2d at 832-33.

Farmers argues that it never claimed misrepresentation, but that the policy was issued upon mistake of fact. Farmers apparently knew enough to name Trusty as the mortgagee. If Farmers claims it did not raise a misrepresentation issue, then the alleged mistake of fact must be based upon its own failure to investigate and it should not be allowed to deny coverage or an insurable interest on this basis.

*III. Attorney Fees*

Farmers contends that neither party is entitled to attorney fees under *Olympic Steamship Co. v. Centennial Ins. Co.,* 117 Wn.2d 37, 811 P.2d 673 (1991). It asserts that *Olympic Steamship* is inapplicable because this case involves a first party property claim rather than a third party liability claim, there was no duty to defend, and no contractual provision for attorney fees.

▉ When reviewing an award of attorney fees, the appellate court inquires whether the prevailing party was entitled to attorney fees and whether an award was reasonable. *Public Util. Dist. 1. v. International Ins. Co.,* 124 Wn.2d 789, 814, 881 P.2d 1020 (1994). A trial court has broad discretion in determining the amount of fees awarded, but an award must be reasonable. *State Farm Mut. Auto. Ins. Co. v. Johnson,* 72 Wn. App. 580, 595, 871 P.2d 1066, *review denied,* 124 Wn.2d 1018 (1994). The

reasonableness of an award is reviewed under an abuse of discretion standard. *Johnson*, 72 Wn. App. at 595.

■ Washington adheres to the American rule in awarding attorney fees under which there is no award of attorney fees as a cost of litigation in the absence of a contract, statute, or recognized ground of equity providing for such recovery. *Dayton v. Farmers Ins. Group*, 124 Wn.2d 277, 280, 876 P.2d 896 (1994). *Olympic Steamship* represents an exception to that rule and provides that "an award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract, regardless of whether the insurer's duty to defend is at issue." *Olympic Steamship*, 117 Wn.2d at 53. More recent case law establishes that attorney fees may be awarded, even in the absence of a so-called supplementary payments clause as found in *Olympic Steamship.* See *McGreevy v. Oregon Mut. Ins. Co.*, 128 Wn.2d 26, 33, 904 P.2d 731, 735 (1995); *Mailloux v. State Farm Mut. Auto. Ins. Co.*, 76 Wn. App. 507, 517, 887 P.2d 449 (1995).

However, *Olympic Steamship* authorizes attorney fees only when the insurer denies coverage and not when it denies a claim, or disputes the value of the claim. *Dayton*, 124 Wn.2d at 280. We recently reaffirmed this rule in *Mailloux*, 76 Wn. App. 517. Whether an insurer denies coverage depends on whether it denies its contractual duty to pay. *Mailloux*, 76 Wn. App. at 517. Questions of coverage involve a determination of who is insured, the type of risk insured against, and whether an insurance contract exists. *Kraus v. Grange Ins. Ass'n*, 48 Wn. App. 883, 886, 740 P.2d 918 (1987). A dispute over the extent of damages is not a question of coverage. *Kraus*, 48 Wn. App. at 886.

Farmers further asserts that *Olympic Steamship* is inapplicable because it honored its commitment to provide coverage and paid the Gossetts for their contents claim, and that the dispute was over the Gossetts' insurable interest in the house. Our review of the record discloses that there was a claim seeking coverage, which the trial

court properly recognized when it awarded attorney fees to the Gossetts for the amount expended to establish coverage.

Farmers next contends that if any party is entitled to attorney fees, it is Farmers. It argues that, under the principles of equality, a prevailing party is entitled to attorney fees. It also argues that it should have been awarded fees because Farmers had to inquire into the Gossetts' "excessive and inflated claim," and that funds should be preserved in order to be available for covered losses and to prevent an increase in the cost of insurance.

Farmers' argument is without merit. *Olympic Steamship* clearly applies when an insurer denies coverage and compels the insured to take legal action to obtain the benefit of his insurance contract. As discussed below, *Olympic Steamship* recognized the unique nature of an insurance contract and represents an attempt to remedy the inequality inherent in such contracts.

█ Farmers argues for the first time in its reply brief that the rule of *Olympic Steamship* is unnecessary because the Consumer Protection Act, RCW 19.86, and the regulatory scheme of the Washington Administrative Code, provide adequate protection for the insured. This argument is resolved by *McGreevy*, which held that the Legislature has not preempted the field of determining when attorney fees may be awarded in insurance cases by specifically providing for attorney fees in the Consumer Protection Act. The *McCreevy* court noted that the Consumer Protection Act is one means of obtaining fees in actions involving insurance coverage, but that "there is nothing in the language of the Consumer Protection Act . . . for the proposition that the Legislature intended to make that Act the exclusive means to recover attorney fees in a case involving a dispute over the coverage of an insurance policy." *McGreevy*, 128 Wn.2d at 38.

Farmers argues that *Olympic Steamship* is wrong because it provides no standards for an insurer and awards fees without a finding of bad faith. Farmers misreads

*Olympic Steamship* and asserts that it results in an insurance company having to pay fees when it "loses a case, even if it had a good faith basis for bringing the case in the first place . . ." As discussed above, *Olympic Steamship* applies only if the insurer denies coverage and the insured is compelled to litigate to hold the insurer to its commitment to provide coverage, and not when an insurance company brings suit.

Farmers contends that the rule in *Olympic Steamship* regarding attorney fees violates the state constitution, equal protection, and due process. Farmers is, in effect, asking this court to overrule both *Olympic Steamship* and *McGreevy,* and we decline to do so. The trial court did not err in awarding attorney fees to the Gossetts.

The Gossetts are further entitled to attorney fees on appeal pursuant to *Olympic Steamship* and RAP 18.1(a), as prevailing party on this appeal. *Johnson,* 72 Wn. App. at 596. Pursuant to RAP 18.1(d), the Gossetts must, within 10 days after the filing of this decision, serve and file with this court an affidavit detailing the expenses incurred and the services performed by counsel.

Reversed and remanded on the issue of limitation of the insurable interest. The trial court is affirmed on attorney fees. Attorney fees are awarded on appeal.

BRIDGEWATER and TURNER, JJ., concur.

Review granted at 130 Wn.2d 1016 (1996).