[No. 16176-5-III. Division Three. January 13, 1998.]

CHRISTINE A. MCGREEVY, *Individually and as Personal Representative, Respondent*, v. OREGON MUTUAL INSURANCE COMPANY, *Appellant*.

---

[5]FRIEDMAN, at § 32.1.

*R. Daniel Lindahl* of *Bullivant, Houser, Bailey, Pendergrass & Hoffman*, for appellant.

*Richard D. Burns* of *Burns & Henry* (and *Darrel W. Aherin* of *Aherin & Rice*, of counsel), for respondent.

BROWN, J. — Today we decide whether a party who successfully secures denied insurance coverage must segregate the effort between the coverage and damage issues when seeking an award of attorney fees using the lodestar method of calculation. Also we decide: 1) whether this record supports the trial court's conclusion that an amount equal to the contingent fee is a reasonable fee; and 2) whether the record supports the cost bill, particularly the denial of experts' fees.

We reverse and remand for further proceedings because we hold a party must segregate the time spent obtaining coverage from proving damages; the trial court misapplied the lodestar method of calculating attorney fees; and the cost bill is not supported by the record. We agree the trial court concluded correctly that the expert fees are not part of the costs.

## FACTS

On April 2, 1988, Christine McGreevy's husband, William McGreevy, was killed in an automobile accident within the coverage period of an insurance policy issued by Oregon Mutual Insurance Company. Mrs. McGreevy claimed the

policy's uninsured motorist (UIM) coverage insured their four vehicles for a total of $400,000. The procedural history of this case shows Oregon Mutual claimed the policy insured one vehicle and the limit of coverage was $100,000. Mrs. McGreevy prevailed on this dispute at summary judgment, at a jury trial, and in a previous appeal.

Before the first appeal and according to the terms of the insurance policy, the parties arbitrated the damages. Mrs. McGreevy was awarded a net total of $455,000. In the first proceeding, Mrs. McGreevy submitted a cost bill to the trial court asking for $14,559.77, including expert witness fees and arbitration costs. The cost bill also listed attorney fees at an hourly rate totaling $45,620, but Mrs. McGreevy requested $145,000 based upon her contingent fee agreement with her attorneys. The court denied any attorney fees to Mrs. McGreevy, and limited her costs to $2,579.38.

In the first appeal, Oregon Mutual challenged the stacking issue and Mrs. McGreevy cross-appealed the trial court's denial of attorney fees and costs award. We affirmed the stacking question but reversed and remanded on the issues of attorney fees and costs. *McGreevy v. Oregon Mut. Ins. Co.*, 74 Wn. App. 858, 876 P.2d 463 (1994). Mrs. McGreevy was awarded $5,836.25 for appellate fees and costs.

Oregon Mutual next appealed to the Washington State Supreme Court where review was accepted solely on the issues of attorney fees and costs. The Supreme Court affirmed our decision after reviewing its holding in *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 54, 811 P.2d 673 (1991). "An insured who is compelled to assume the burden of legal action to obtain the benefit of the insurance contract is entitled to attorney fees, regardless of whether the duty to defend is at issue . . . ." *McGreevy v. Oregon Mut. Ins. Co.*, 128 Wn.2d 26, 27, 904 P.2d 731 (1995). Mrs. McGreevy was awarded $10,370.57 for fees and costs at the Supreme Court and the matter was returned to the trial court on our mandate to determine the attorney fees and costs.

This brings us to the current posture of this case. The trial court on remand awarded Mrs. McGreevy $145,000 for attorney fees, an amount equal to her contingent fee, however, declined to modify the previously awarded costs. Oregon Mutual appeals contending the trial court erred when it increased the lodestar amount and decided the contingent fee was a reasonable fee. Mrs. McGreevy cross-appeals contending the costs should include experts' fees.

## ANALYSIS

■ A. Standard of review. When reviewing an award of attorney fees, the relevant inquiry is first, whether the prevailing party was entitled to attorney fees, and second, whether the award of fees is reasonable. *Public Util. Dist. No. 1 v. International Ins. Co.*, 124 Wn.2d 789, 814, 881 P.2d 1020 (1994); *Gossett v. Farmers Ins. Co.*, 82 Wn. App. 375, 387, 917 P.2d 1124 (1996). Whether a party is entitled to attorney fees is an issue of law. *Tradewell Group, Inc. v. Mavis*, 71 Wn. App. 120, 126, 857 P.2d 1053 (1993). Whether the amount of fees awarded was reasonable is reviewed under an abuse of discretion standard. *American Nat'l Fire Ins. Co. v. B&L Trucking & Constr. Co.*, 82 Wn. App. 646, 669, 920 P.2d 192 (1996). A trial judge is given broad discretion in determining the reasonableness of an award, and in order to reverse that award, it must be shown that the trial court manifestly abused its discretion. *Scott Fetzer Co. v. Weeks*, 122 Wn.2d 141, 147, 859 P.2d 1210 (1993).

■■ B. Entitlement to attorney fees. "Washington follows the American rule in awarding attorney fees." *Dayton v. Farmers Ins. Group*, 124 Wn.2d 277, 280, 876 P.2d 896 (1994). Under the American rule, a court may award fees "only if authorized by 'contract, statute, or recognized ground in equity.' " *Bowles v. Department of Retirement Sys.*, 121 Wn.2d 52, 70, 847 P.2d 440 (1993) (quoting *Painting & Decorating Contractors, Inc. v. Ellensburg Sch. Dist.*, 96 Wn.2d 806, 815, 638 P.2d 1220 (1982)). A narrow exception to that rule is carved out in *Olympic S.S.* where the

court held that insureds are entitled to attorney fees after they are compelled to assume the burden of legal action to obtain the benefit of their insurance contract. *Olympic S.S.,* 117 Wn.2d at 54. *See McGreevy,* 128 Wn.2d 26; *Public Util. Dist.,* 124 Wn.2d at 815; *Estate of Jordan v. Hartford Accident & Indem. Co.,* 120 Wn.2d 490, 507-08, 844 P.2d 403 (1993).

The rule articulated in *Olympic S.S.* authorizes attorney fees only when the insurer denies coverage and not when it denies a claim or disputes the value of the claim. *Dayton,* 124 Wn.2d at 280-81; *Gossett,* 82 Wn. App. at 388; *Kroeger v. First Nat'l Ins. Co.,* 80 Wn. App. 207, 209, 908 P.2d 371 (1995), *review denied,* 129 Wn.2d 1002 (1996); *Mailloux v. State Farm Mut. Auto. Ins. Co.,* 76 Wn. App. 507, 518-19, 887 P.2d 449 (1995). A dispute over the extent of damages is not a question of coverage. *Gossett,* 82 Wn. App. at 386; *McGreevy,* 128 Wn.2d at 32 n.4.

██ In this case, there were two stages of litigation. The summary judgment and jury trial decided the issue of UIM coverage under the Oregon Mutual policy. After the coverage issue was decided, the parties then submitted to arbitration to determine the amount of damages. Mrs. McGreevy is entitled to attorney fees for work performed to obtain coverage. *Olympic S.S.,* 117 Wn.2d at 54. She is not entitled to attorney fees for the work performed to obtain damages. *Dayton,* 124 Wn.2d at 281. The law does not allow recovery of fees for both. "[W]hen a number of actions are argued and only some of those allow for recovery of attorney fees, it would give the prevailing party an unfair benefit to award attorney fees for the entire case. Rather, attorney fees should be awarded only for those services related to the causes of action which allow for fees." *Boeing Co. v. Sierracin Corp.,* 108 Wn.2d 38, 66, 738 P.2d 665 (1987) (citing *Nordstrom, Inc. v. Tampourlos,* 107 Wn.2d 735, 743, 733 P.2d 208 (1987)).

We conclude the trial court erred by not requiring the segregation of the attorney fees attributable to the legal coverage issue resolved by the courts from the factual damage issue resolved by the arbitration. Therefore, Mrs.

McGreevy is entitled solely to fees related to resolving the coverage question. Because the record does not show segregation of the fees took place, we must remand again to the trial court for further proceedings. We will next discuss the reasonableness of an attorney fees award to assist the trial court's decision making and in response to Oregon Mutual's further contentions.

C. Reasonableness of attorney fees. In addition to establishing entitlement to attorney fees, the party requesting them must also establish they are reasonable. *Absher Constr. Co. v. Kent Sch. Dist.*, 79 Wn. App. 841, 847, 905 P.2d 1229, 917 P.2d 1086 (1995); *Scott Fetzer*, 122 Wn.2d at 151. "Whether or not a fee is reasonable is an independent determination to be made by the awarding court." *Absher*, 79 Wn. App. at 847. The "lodestar method" is the accepted starting point in those cases involving insureds that assume the burden of legal action to obtain the benefit of insurance. *Ross v. State Farm Mut. Auto. Ins. Co.*, 82 Wn. App. 787, 799, 919 P.2d 1268 (1996), *reversed on other grounds*, 132 Wn.2d 507, 940 P.2d 252 (1997).

"The lodestar award is arrived at by multiplying a *reasonable* hourly rate by the number of hours *reasonably* expended on the matter." *Scott Fetzer*, 122 Wn.2d at 149; *Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 581, 597, 675 P.2d 193 (1983). The first step is to look to the number of hours expended. The second step is to determine if the hourly fee charged was reasonable—the third step is to multiply the two to reach the lodestar fee. Finally, "After calculating a lodestar fee, the court should consider whether it needs adjustment either upward or downward to reflect factors not already taken into consideration." *Ross*, 82 Wn. App. at 800; *Bowers*, 100 Wn.2d at 598-99.

There are two broad categories of factors to consider when adjusting the fee, one for contingent risk and the other for quality of work. Most important here, "the (contingent) risk factor should be applied only to time expended before recovery is assured; for example, time expended in obtaining the fees themselves should not be

adjusted." *Bowers*, 100 Wn.2d at 599. We point out that recovery was assured on the coverage question when our Supreme Court declined to accept review for that issue after the first appeal to our court. On remand the trial court should grant no adjustment for the hours expended to obtain attorney fees after that point.

1. Lodestar hours and fees. In order to determine if the number of hours expended is reasonable, "the attorneys must provide reasonable documentation of the work performed." *Bowers*, 100 Wn.2d at 597. That documentation must include, at a minimum, (1) the number of hours worked; (2) the type of work performed; and (3) the category of attorney who performed the work. *Bowers*, 100 Wn.2d at 597. "An explicit hour-by-hour analysis of each lawyer's time sheets is unnecessary as long as the award is made with a consideration of the relevant factors and reasons sufficient for review are given for the amount awarded." *Absher*, 79 Wn. App. at 848. The awarding court should take into account the hours spent on unsuccessful claims, duplicated effort, or otherwise unproductive time. *Bowers*, 100 Wn.2d at 597. For example, in this case the trial court must segregate between the hours spent on the coverage issues as compared to the damage issues.

Fees of nonlawyers are included in the claim for fees. Fees of nonlawyer personnel may be properly requested as part of an attorney fee award. *Absher*, 79 Wn. App. at 848. The cost bill submitted by Mrs. McGreevy asked for fees incurred as a result of work performed by the paralegal. However, the bill included only information about the hours worked and hourly rate for a total of $2,375 worth of paralegal fees. This does not meet the necessary criteria for a court's determination in making an award for nonlawyer fees. *Absher*, 79 Wn. App. at 845 lists the information to be submitted. The trial court abused its discretion by including the hours for the paralegal without further consideration of her qualifications and the work performed, and without mention of the time spent between the coverage and damages issues.

When attorneys have an established rate for billing clients, that rate will likely be a reasonable rate. *Bowers*, 100 Wn.2d at 597. "The reasonable hourly rate should be computed for each attorney, and each attorney's hourly rate may well vary with each type of work involved in the litigation." *Id.* Oregon Mutual argues the contingent nature of the risk is reflected once in the hourly rate specified for each attorney, and the court erred in reconsidering it separately as a lodestar adjustment factor. "[T]o the extent, if any, that the hourly rate underlying the lodestar fee comprehends an allowance for the contingent nature of the availability of fees, no further adjustment duplicating that allowance should be made." *Id.* at 599. It will be helpful on remand to specify whether there is any duplication. The court is not bound, however, by the attorney's usual fee and may consider the level of skill required by the litigation, time limits imposed by the litigation, the amount of the potential recovery, the attorney's reputation, and the undesirability of the case. *Id.* After taking those factors into consideration, the court may increase the hourly rate to reflect a reasonable rate. *Id.*

It is disputed, and unclear from the record, whether the $150 hourly rate for Mrs. McGreevy's attorney was his usual billing rate or whether he increased his rate based on the contingent nature of the case. The record does indicate that this court and the Supreme Court awarded his attorney fees based on a $150 hourly rate. There is no indication whether that was his usual rate for appellate work or was his flat rate for all work; or whether it is an indication that his usual rate had been increased to $150 an hour due to the complexities of this case. The only documentation provided in the record is an affidavit from him stating that the "costs and attorney fees are reasonable costs for this matter." Although a trial court may adopt a reasonable hourly rate based on affidavits, *Scott Fetzer*, 122 Wn.2d at 153-54, his affidavit does not discuss the issue of hourly rate. The court's finding that "the rates were the normal billing rates of plaintiff's attorney," is unsupported by the record. Knowing whether the hourly rate has already been

increased in a particular case becomes relevant in determining whether the court later has properly exercised its discretion to increase the fee award as an adjustment after the lodestar amount has been determined. *Ross,* 82 Wn. App. at 800.

■■■ 2. Lodestar adjustments. "After calculating a lodestar fee, the court should consider whether it needs adjustment either upward or downward to reflect factors not already taken into consideration." *Ross,* 82 Wn. App. at 800. As previously discussed, "[a]djustments to the lodestar are considered under two broad categories: the contingent nature of success, and the quality of the work performed." *Bowers,* 100 Wn.2d at 598; *Ross,* 82 Wn. App. at 800. Adjusting the lodestar amount is within the trial court's discretion. *Burnside v. Simpson Paper Co.,* 66 Wn. App. 510, 532, 832 P.2d 537 (1992).

■■■■ Oregon Mutual contends the fee award is excessive and unreasonable because it is three times the amount of actual attorney costs incurred under the lodestar formula. An award of fees is not improper merely because it is three times the lodestar amount. *See Bowles v. Department of Retirement Sys.,* 121 Wn.2d 52, 73, 847 P.2d 440 (1993). The issue is whether the court adjusted the lodestar amount based upon factors that were not already subsumed in the initial lodestar calculation, i.e., a higher hourly rate based on the contingent nature of the case. *Scott Fetzer,* 122 Wn.2d at 150. "Although the foundation of the award is built upon objective criteria, adjustments to the award are permitted to account for a number of subjective factors." *Id.* Some of those factors include the contingency or certainty in collecting the fee and the skill required. *Id.;* *Dailey v. Testone,* 72 Wn.2d 662, 664, 435 P.2d 24 (1967). They are not the only factors. "The existence of a contingent fee agreement may be considered as one of several factors in making an award of attorneys' fees, but it alone is not determinative." *Allard v. First Interstate Bank,* 112 Wn.2d 145, 151, 768 P.2d 998 (1989).

Here, the trial court awarded the amount of the contin-

gent fee agreement, $145,000, rather than the lodestar amount, $45,620, because of

> the contingent nature of success, the contingent fee agreement between the plaintiff and her attorneys, the high degree of risk incurred by plaintiff's attorneys in handling her case, and the good outcome obtained for the plaintiff . . . . The contingent fee amount is a reasonable fee and takes into account the factors set out above in arriving at a lodestar figure. The defendant insurance company chose to contest coverage all the way to the Supreme Court and therefore this case does not fall within *Dayton v. Farmers Ins. Group*, 124 Wn.2d 277, 876 P.2d 896 (1994).

The trial court relies heavily on the contingent fee agreement in making its award without sufficient evidence that the $150 hourly rate did not already take that into consideration. Furthermore, the lodestar amount is the starting point from which to adjust, and, here, the lodestar formula is flawed because it includes hours for the damages arbitration. Additionally, the court's finding that the fee is reasonable because Oregon Mutual contested the coverage issue all the way to the Supreme Court does not take into account that Mrs. McGreevy was already awarded over $16,000 in appellate attorney fees. The court's findings do not suggest that the award is based on the quality of services performed by the attorneys; however on remand the trial court should address this factor so that we need not speculate whether it was inadvertently omitted.

We decide the trial court abused its discretion by awarding Mrs. McGreevy $145,000 in attorney fees. We conclude the trial court set the contingent fee amount as the reasonable fee without properly determining the lodestar amount and then failing to properly consider the adjustment factors developed in *Bowers* and its progeny.

■ D. Costs. Mrs. McGreevy cross-appeals, contending the trial court erred when denying all of her claimed costs; particularly the experts' fees. RCW 4.84.030 provides: "In

any action in the superior court of Washington the prevailing party shall be entitled to his or her costs and disbursements . . . ." Given the plain meaning of the statute, the costs associated with the arbitration proceeding would not fall within the statutory definition. The UIM arbitration is not an action in superior court but rather is a contractual proceeding under the insurance policy.

 In any event, the trial court entered no findings outlining how the costs were calculated. Additionally, Mrs. McGreevy offers no assistance on review as to what, if any, was the segregation of costs during arbitration versus the litigation of the coverage issue. We note, as did Oregon Mutual in its reply brief, the difficulty in addressing the costs without some specification by the trial court how they were calculated. For example, the trial judge stated he knew of no authority for an award of expert fees, and we can infer from the final amount they were excluded. This would be proper. *See Wagner v. Foote*, 128 Wn.2d 408, 416-17, 908 P.2d 884 (1996) (experts' fees are not an element of damages nor are they authorized by statute as an award of costs to be paid by the losing party).

## CONCLUSION

We reverse the trial court's award of attorney fees in an amount equal to the contingent fee because it failed to properly segregate between the coverage and damage claims. This made the initial lodestar amount incorrect. Further, the record is not clear that the hourly fees were not at least in some part already based upon the contingent nature of the case. The record does not show the trial court's reasoning regarding its adjustment of the lodestar amount or the method of calculation of the finally determined amount. The adjustment factors for the contingent nature of the claim and the quality of the work must be revealed in the record once the lodestar amount is properly calculated. Also, the itemization of the costs needs to be specified as we are unable to determine from this record

how they were determined. We approve the exclusion of the expert witness fees as that appears to be part of the trial court's reasoning.

We reverse the trial court and remand for further proceedings consistent with this opinion.

SCHULTHEIS, C.J., and SWEENEY, J., concur.