IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ZAK SMITH, | No. 85425-9-I |
| Appellant, | DIVISION ONE |
| v. | |
| GEN CON LLC, a Washington State Limited Liability Company; PETER ADKISON, an individual; and PETER ADKISON AND DENISE FENTON, and the marital community composed thereof, | UNPUBLISHED OPINION |
| Respondents. | |

BOWMAN, J. — Zak Smith sued Gen Con LLC and Peter Adkison for defamation, defamation per se, false light, and interference with a business expectancy. The trial court dismissed his lawsuit as a discovery sanction. Smith argues the trial court abused its discretion by dismissing his case and granting defendants' requests for attorney fees. We affirm.

FACTS[1]

Smith is an artist who began developing tabletop role-playing games (RPGs) in 2010. Gen Con is the largest and longest-running tabletop convention company in North America. Adkison is the co-owner and board chairperson of Gen Con. Smith regularly attended Gen Con events and generated business

---

[1] We repeat the relevant facts set forth in our prior opinion as necessary for the issues we address in this opinion. *See Smith v. Gen Con LLC*, No. 82672-7-I (Wash. Ct. App. July 11, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/826727.pdf.

relations, consulting jobs, sales, and other business in the RPG industry from the conventions.

In February 2019, Smith's estranged wife published a Facebook post, accusing Smith of sexual assault during their marriage. Adkison then published a statement in response to the accusations on Gen Con's website, banning Smith from Gen Con events. He also posted a link to his statement on Facebook in support of the ban, declaring that the " 'evidence was overwhelming' " that Smith is an " 'abuser.' "

On February 8, 2021, Smith sued Gen Con, Adkison, and Adkison's wife, (collectively Gen Con), alleging defamation, defamation per se, false light, outrage, interference with a business expectancy, and violation of the Consumer Protection Act (CPA), chapter 19.86 RCW. Gen Con moved to dismiss the complaint for failure to state a claim under CR 12(b)(6), and the trial court granted the motion. Smith appealed the order. We affirmed dismissal of the outrage and CPA claims but reversed and remanded the claims of defamation, defamation per se, false light, and intentional interference with a business expectancy for further proceedings.[2]

On October 21, 2022, Gen Con served Smith with its first requests for production and first set of interrogatories. Smith did not timely respond, so the parties met and conferred about the issue on November 30. Smith submitted his responses on December 2.

---

[2] *Smith*, No. 82672-7-I, at 12, 17. On November 10, 2022, Smith amended his complaint, alleging only defamation, defamation per se, false light, and interference with a business expectancy.

On December 23, 2022,[3] Gen Con wrote Smith a letter, acknowledging receipt of his discovery responses but explaining that they were provided "12 days past the deadline" and "deficient." Gen Con identified several incomplete responses, including Smith's failure to identity each person likely to have discoverable information related to his claims, and a description of what that information may be. Smith listed several names but did not provide contact information or identify the discoverable information each person possessed. Gen Con also told Smith that he failed to "[i]dentify, quantify, and describe in detail all the damages" he suffered, or each "game forum, company, group, or other organization" he claimed blacklisted or banned him as a result of Gen Con's alleged wrongful conduct.

Around that time, Smith hired a new lawyer, Matthew Davis. Gen Con emailed Davis and attached a copy of the December 23 letter. It asked for interrogatory responses by January 6, 2023. Davis responded by email on December 28, 2022, but did not address the alleged deficient discovery responses. Instead, he asked whether Gen Con would "acknowledge the consequences of its actions for Mr. Smith's life" and, if not, notified Gen Con's attorney that he "will be noting a CR 30(b)(6) deposition of your client for the third week of January." Gen Con responded on December 29. Gen Con's counsel told Davis that "we've been asking for Smith's documents and discovery responses for many weeks now," and we "need those documents so that we can schedule [Smith's] deposition."

---

[3] The letter is misdated as December 23, 2021.

Davis did not respond to the email, so Gen Con sent another on January 3, 2023, asking if Davis was available to "meet and confer" on January 6. Again, Davis did not respond. So, Gen Con emailed him on January 9, referencing the alleged deficient discovery responses and requesting his availability to meet and confer. On January 11, Gen Con still had not heard from Davis, so it sent another email, urging Davis to register for "e-service,"[4] asking to meet and confer, and explaining that it would "file a motion to compel if we do not receive supplemental responses this week." Davis again did not respond, so Gen Con resent the same email on January 18.

The evening of Wednesday, January 18, 2023, Davis responded, asking to "speak about the discovery on Monday" so he would have "time to get up to speed with it." Gen Con replied the next day. It told Davis that "we are of course available to speak—we've been asking for weeks, after all. You've largely ignored us." It asked Davis to "please send us times that you are available on Monday or Tuesday" and to supplement Smith's interrogatory responses "by Monday end of day." Davis said, "I will be ready to discuss it on Monday."

The next day, Friday, January 20, 2023, Gen Con reminded Davis that "[y]ou still haven't told us when you are available on Monday or Tuesday to confer. Please provide your availability." Davis did not respond. On Tuesday, January 24, Gen Con told Davis it has "tried repeatedly to confer with you but you continue to ignore our requests for a time to speak." It asked Davis again to

---

[4] "E-service" is a reference to the King County Superior Court electronic filing and service system. Under King County Local General Rule (KCLGR) 30, parties must electronically file and serve all documents unless the rule provides otherwise. *See* KCLGR 30(b)(4)(A), (B)(i).

supplement Smith's interrogatory responses by Friday, January 27, or Gen Con would move to compel responses. Davis did not respond.

On February 1, 2023, Gen Con moved to compel discovery. It asked the court to order Smith to "fully and without objection" answer Gen Con's first set of interrogatories within 14 days. And it requested "reasonable attorneys' fees associated with this discovery dispute." Davis did not respond to the motion.

On February 14, 2023, the trial court issued an order granting Gen Con's motion to compel discovery. The court ordered Smith to produce responses to discovery no later than February 28. And it declared that all objections, other than those based on privilege, are waived, but that Smith must provide a detailed privilege log by February 28. Finally, the court ordered Smith to "pay the reasonable attorneys' fees and costs Defendants have incurred relating to this discovery dispute."

The afternoon of February 14, 2023, Davis emailed the court, acknowledging receipt of the order, claiming he did not receive a copy of the motion to compel, and asking if he could have a chance to respond. Gen Con objected, pointing out that Davis "is signed up for e-service," that Gen Con had served its briefs through e-service, and that Davis received the trial court's order by email, which "is the same e-mail as his e-service." The trial court did not respond to Davis' request.

Later that day, Davis emailed Gen Con directly, explaining that he "was careful not to claim that [he] did not receive the motion," and acknowledging that he is signed up for e-service and has "received other documents that way." Still,

he could find no evidence that he received the motion to compel. He asked Gen Con's attorney to be "as gracious and cordial as the others" Davis had encountered at his firm, Perkins Coie. But Davis also told him that he had "encountered attorneys who made everything difficult and were essentially jerks," and "I would observe that your client faces a far more extensive discovery burden than mine. If that is the way you choose to play it, then I will be forced to play the same way."

On February 27, 2023, a day before the court-ordered deadline, Davis emailed Gen Con, asking for more time to complete the discovery responses. He explained that he was doing his best to be thorough but needed another two weeks, and hoped that it would "accept my statement and allow me time to finish the work." Gen Con responded that Davis had "used variations of the same excuse" for months, that it expects "full compliance by the deadline," and that if he did not comply, it would "bring this issue to the Court's attention in a motion for an order to show cause and for sanctions." Davis told Gen Con to "[d]o what you want. I am working as fast as I can. If you demand the impossible, you probably won't get it."

Smith did not provide supplemental discovery responses on February 28 as ordered by the court. So, on March 2, 2023, Gen Con moved for a show cause order and discovery sanctions. It asked for daily monetary penalties until Smith complied with the court's order, an order to show cause why the court should not hold Smith and Davis in contempt, and an award of attorney fees and costs. Smith did not respond to the motion.

On March 13, 2023, the trial court issued an "Order Granting Defendants' Fee Petition" related to its February 14 order compelling discovery. In the March 13 order, the court told Smith it was aware as of March 10 that he "still had not complied with the February 28, 2023 deadline" in the order compelling production of discovery. And that "failure to comply with discovery can be considered evidence of willfulness, that delay in providing discovery is prejudicial to trial preparation, and that failure to comply with court orders may lead to consideration of more significant sanctions."[5]

On March 15, 2023, the court issued an order on Gen Con's March 2 show cause motion. The court found that Smith "appears to date to have disregarded my February 14" order, and that he "has not provided any explanation for his failure to comply" with the order "or indeed any response at all to this motion." The court ordered Smith to "immediately provide discovery as directed" in the February 14 order and to pay reasonable attorney fees and costs "associated with this present motion." Later, the court granted Gen Con's fee petition related to the court's March 15 discovery order. The court again warned that "continued failure to promptly comply in full with the Court's orders compelling" discovery will "likely lead to much more significant sanctions, including, possibly, dispositive relief."[6]

---

[5] The trial court awarded Gen Con $23,337.50 in attorney fees. Smith refused to pay the attorney fees. Davis argued alternatively that the court's order was interlocutory and "not enforceable until entry of a final judgment pursuant to CR 54(b)," and that Smith could not afford to pay.

[6] The court awarded Gen Con $29,945.50 in attorney fees. Smith again refused to pay the fees.

On March 22, 2023, Smith provided supplemental responses to Gen Con's interrogatories and requests for production. On March 24, Gen Con emailed Davis with a list of alleged deficiencies in the responses. Gen Con pointed out that Smith still had not identified the discoverable information possessed by the list of people he claimed had such information, provided details of the damages he claimed to suffer, nor provided sufficient details of each game forum, company, group, or other organization he claimed blacklisted or banned him as a result of Gen Con's alleged wrongful conduct.

Davis did not respond to the email. So, on March 28, 2023, Gen Con asked Davis to meet and confer. The parties met on April 3 and agreed that Davis would supplement Smith's responses by April 10. On April 10, Davis emailed Gen Con with Smith's supplemental responses. Davis told Gen Con that "Smith does not have contact information for the persons . . . he listed" as having discoverable information, and that Smith "does not know what knowledge they possess." And he told Gen Con that Smith "has provided all responsive information in his possession or control" about the amount of damages he suffered. He explained that "[y]ou might not like his answer, but it is his answer." Gen Con replied that "the supplemental responses remain as deficient as they were last week."

On April 17, 2023, Gen Con moved for termination sanctions. It argued that Smith willfully refused to comply with several court orders to provide full discovery, and that lesser sanctions have not successfully compelled

responses.[7]  And it asked for attorney fees and costs.  On April 25, Gen Con replied to its motion, pointing out that Smith had again filed no response.

That same day, Davis responded, claiming that for "the second time in this case," he did not receive notice of Gen Con's motion.  Davis asked to move the hearing date so he could adequately respond to Gen Con's motion.  Over Gen Con's objection, the trial court rescheduled the hearing date to May 10 and set new briefing deadlines.

On May 1, 2023, Davis filed a "Response to Motion for Termination Sanctions," arguing that Smith "has fully answered defendants' discovery requests," so the court should deny the motion.  On May 10, the trial court issued an "Order Granting Defendants' Motion for Termination Sanctions."  It determined that Smith had willfully refused to comply with several of the court's orders to fully produce discovery, that he had done so despite the imposition of lesser sanctions, and that the failure to produce prejudiced Gen Con.  As a result, the court dismissed Smith's complaint with prejudice.  The court denied Gen Con's request for attorney fees and costs, explaining that further monetary sanctions were not warranted.

Smith appeals.

---

[7] Gen Con also complained about what it characterized as Davis' "threats" throughout their communications.  For example, Davis intermittently told Gen Con that Smith would bring his own motion to compel and seek sanctions.  He said Gen Con may want to "advise whoever runs Perkins Coie that a motion seeking substantial CR 26(g) sanctions is on the way because of the manner in which you have obstructed discovery." And Davis told Gen Con that "[t]hings are about to get interesting."

ANALYSIS

Smith argues that the trial court erred by dismissing his complaint as a discovery sanction and awarding Gen Con excessive attorney fees.

1. <u>Termination Sanction for Discovery Violations</u>

Smith argues the trial court abused its discretion by dismissing his complaint as a discovery sanction. We disagree.

A trial court has broad discretion in imposing discovery sanctions under CR 37(b), and we will not disturb its determination absent a clear abuse of that discretion. *Mayer v Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006). A trial court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. *State v. Thurlby*, 184 Wn.2d 618, 624, 359 P.3d 793 (2015).

> A discretionary decision rests on "untenable grounds" or is based on "untenable reasons" if the trial court relies on unsupported facts or applies the wrong legal standard; the court's decision is "manifestly unreasonable" if "the court, despite applying the correct legal standard to the supported facts, adopts a view that no reasonable person would take."

*Mayer*, 156 Wn.2d at 684[8] (quoting *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)).

CR 37 authorizes the trial court to impose sanctions against a party who violates a discovery order. Under CR 37(b)(2), a trial court "may make such orders in regard to the failure [to obey a discovery order] that are just." The rule provides a nonexhaustive list of possible sanctions, which includes "dismissing the action or proceedings or any part thereof." CR 37(b)(2)(C). Generally, the

---

[8] Internal quotation marks omitted.

trial court should impose the least severe sanction that will adequately compensate the harmed party; deter, punish, and educate the wrongdoer; and ensure that the wrongdoer does not profit from the wrong. *Barton v. Dep't of Transp.*, 178 Wn.2d 193, 215, 308 P.3d 597 (2013).

When a trial court imposes one of the harsher remedies under CR 37(b), the record must clearly show that one party willfully or deliberately violated the discovery rules and orders, that the opposing party suffered substantial prejudice in its ability to prepare for trial, and that the trial court explicitly considered whether a lesser sanction would have sufficed. *Magaña v. Hyundai Motor Am.*, 167 Wn.2d 570, 584, 220 P.3d 191 (2009). A court may consider a party's disregard of a court order without reasonable excuse or justification as willful. *Id.* But willfulness does not necessarily follow from the violation of a court order alone. *Jones v. City of Seattle*, 179 Wn.2d 322, 345, 314 P.3d 380 (2013). "Something more is needed." *Id.*

The record supports the trial court's determination that Smith willfully or deliberately violated discovery rules and court orders. Smith's initial response to Gen Con's requests for discovery was late. Then, Gen Con repeatedly explained to Davis what it believed to be deficiencies in Smith's discovery responses and sought to meet and confer about the issues. Davis ignored most of Gen Con's requests to meet and confer and failed to meet the agreed deadline for supplemental responses after a meeting did occur. Smith failed to respond to each of Gen Con's motions to compel and ignored the deadlines established for production of discovery in each of the court's orders. While Davis asked Gen

11

Con to agree to an extension of the trial court's deadline to produce discovery, he made no motion to the court to extend the deadline.

Davis argues that Smith fully complied with the court's orders. According to Davis, Smith's responses to discovery were complete because he had no ability to determine the information known by the people he identified as witnesses, no duty to provide a "numerical basis" for his damages, and was unable to specifically identify any individual or organization that blacklisted him because of Gen Con's conduct. But Davis did not provide this information in signed discovery responses, move for a protective order, or otherwise explain to the trial court his reasons for Smith not responding to Gen Con's discovery requests. *See* CR 37(d) (the court will not excuse a party that fails to answer properly served interrogatories, or provides "evasive or misleading answer[s]," unless the party failing to act "has applied for a protective order" under CR 26(c)); *Johnson v. Mermis*, 91 Wn. App. 127, 133, 955 P.2d 826 (1998) (if a party disagrees with the scope of production, or wishes not to respond to discovery requests, it must move for a protective order). Instead, Smith produced supplemental responses six months after Gen Con's discovery requests, which Gen Con still alleged were "deficient," and Davis made no effort to explain why he believed the responses were complete until Gen Con moved for termination sanctions.

The record also supports the trial court's finding that lesser sanctions proved inadequate to motivate Davis to respond to Gen Con's discovery requests. The court twice warned Davis that more significant sanctions would

follow if he did not comply. And the court twice shifted attorney fees to Smith. Still, Davis failed to provide additional discovery responses or explain his reasons for not responding by the trial court's deadlines.

Finally, the trial court concluded that the "prejudice to Defendants is obvious." It explained that given the inadequate responses, Gen Con is unable to "determine who to depose and on what topics, prepare for summary judgment or trial, or even learn the basis for Plaintiff's damages and causation claims in his complaint." This is a tenable conclusion given the substance of information withheld.

Under these circumstances, the trial court did not abuse its discretion by dismissing Smith's complaint as a sanction for discovery violations.[9]

2. Attorney Fees

Smith argues that the trial court erred by awarding Gen Con excessive attorney fees for "routine motions to compel discovery." We disagree.

We review an award of attorney fees for an abuse of discretion. *Estrada v. McNulty*, 98 Wn. App. 717, 723, 988 P.2d 492 (1999). The burden of showing that a fee is reasonable rests with the fee applicant. *Berryman v. Metcalf*, 177 Wn. App. 644, 657, 312 P.3d 745 (2013).

Generally, Washington courts apply the lodestar method to calculate attorney fees. *Mahler v. Szucs*, 135 Wn.2d 398, 433, 957 P.2d 632 (1998). To arrive at a lodestar award, the court first considers the number of hours reasonably expended on the case. *McGreevy v. Or. Mut. Ins. Co.*, 90 Wn. App.

---

[9] Because we affirm the trial court's order dismissing Smith's complaint, we need not reach Smith's argument that we should remand to a different judge.

283, 291, 951 P.2d 798 (1998). To this end, the attorney must provide reasonable documentation of the work performed, including the number of hours worked, the type of work performed, and the attorney who performed the work. *Id.* at 292. The court should discount hours spent on unsuccessful claims, duplicated effort, or otherwise unproductive time. *Id.*

Next, the court determines whether the hourly fee charged was reasonable. *McGreevy*, 90 Wn. App. at 291. When attorneys have an established rate for billing clients, that rate is likely a reasonable rate. *Id.* at 293. The usual rate is not, however, conclusively a reasonable fee. *Id.* The court may also consider the attorney's level of skill, reputation, local rates charged by attorneys with similar skill and experience, or other factors relevant to the desirability and difficulty of the case. *Id.* The court then multiplies the reasonable hourly rate by the number of hours reasonably expended on the matter. *Id.* at 291.

Courts must take an active role in assessing the reasonableness of attorney fee awards and should not treat cost decisions as a " 'litigation afterthought.' " *Berryman*, 177 Wn. App. at 657 (quoting *Mahler*, 135 Wn.2d at 434). While the court does not need to "deduct hours here and there just to prove to the appellate court that it has taken an active role in assessing the reasonableness of a fee request," it must issue findings of fact and conclusions of law that "do more than give lip service" to the word "reasonable." *Id.* at 658. The findings and conclusions must be "sufficient to permit a reviewing court to determine why the trial court awarded the amount in question." *SentinelC3, Inc.*

*v. Hunt*, 181 Wn.2d 127, 144, 331 P.3d 40 (2014). They must show how the court resolved disputed issues of fact and explain the court's analysis. *Berryman*, 177 Wn. App. at 658.

Citing *Berryman*, Smith argues that Gen Con's fees are excessive, and that he should not be required to " 'pay for a Cadillac approach to a Chevrolet case.' " 177 Wn. App. at 662. According to Smith, the amount of fees awarded is unreasonable "for an unopposed motion to compel discovery" and a "routine motion that is opposed." And he asserts the trial court erred because it "awarded Perkins Coie every cent of its requests."

In *Berryman*, the trial court signed a party's proposed findings of fact and conclusions of law "without making any changes except to fill in the blank for the multiplier of 2.0." 177 Wn. App. at 657. The findings did not address the opposing parties' arguments for reducing billed hours to account for duplicative effort and unproductive time. *Id*. Instead, the court "simply found that the hourly rate and hours billed were reasonable." *Id*. We determined that the court's findings were "conclusory" and that there was "no indication that the trial judge actively and independently confronted the question of what was a reasonable fee." *Id*. at 658.

Unlike the trial court in *Berryman*, the court's orders here show that it considered and rejected Smith's arguments. As to the first petition for fees, Smith argued to the trial court that motions to compel "are rote work," and that

"37.4 hours on a routine discovery motion" is unreasonable.[10]  In resolving the dispute, the trial court did not simply adopt Gen Con's proposed order without making any changes.  Instead, the court said it determined that the amount of requested fees was reasonable after "careful scrutiny of the hours expended and rates charged," and explained that the amount compensates all the hours "reasonably expended by Defendants in connection with Mr. Smith's failure to engage with the discovery process, not merely in drafting the motion to compel."

As to the second petition for fees, Smith made no meaningful challenge to the reasonableness of counsels' billing rate or the time spent responding to his failure to engage in the discovery process.  Instead, he belatedly argued that sanctions should not have been imposed in the first place.  Smith explained that Davis emailed counsel to warn Gen Con that the discovery would not be timely provided.  And if counsel "had just done what every reasonable attorney does in similar situations and worked out an agreement for a short extension," he would have incurred none of the fees.  Still, the trial court said in its order that it "reviewed Defendant's [fee] submissions closely" and decided that the fees were "well supported" and "reasonable."

From these orders, we can conclude that the trial judge actively and independently confronted the question of what is a "reasonable" fee.  The trial court did not abuse its discretion in awarding Gen Con attorney fees.

---

[10] Smith also challenged the billing rate for one attorney "with a year of experience" but offered no argument about what he believed a reasonable hourly rate would be.

Because the trial court did not abuse its discretion by dismissing Smith's lawsuit as a discovery sanction and awarding Gen Con attorney fees, we affirm.[11]

Brunner, J

WE CONCUR:

Feldman, J.                    Birk, J.

---

[11] Smith requests attorney fees on appeal. It appears he seeks fees as the prevailing party in a discovery dispute under CR 37(a)(4) and RAP 18.1. Because we affirm the trial court's orders, Smith is not the prevailing party on appeal. As a result, we reject his request for fees.